MARY JANE WARD, Individually, as Executrix, etc., *v.* DE WITT CLINTON WARD, Appellant, DE WITT CLINTON WARD Individually, and as Executor, etc., et al., Respondents.

A will and a codicil thereto are to be taken and construed together as one instrument, and although the will contains no words creating a trust, if from the two instruments it can be implied that it was the testator's intent to establish a trust in the executors for objects declared and set forth in the will, it is sufficient.

Where the duties imposed upon the executors are active and render the possession of the estate convenient and reasonably necessary, the executors will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit terms.

By the will of M., and a codicil, his executors were directed to pay his debts out of his estate as soon " as shall by them be found convenient." To each of his two sons he gave $10,000, to be paid to them in money or property on arriving at the age of thirty years.  The testator also made provision for the support of his mother, an aunt and sister, and directed that so much as should be necessary for that purpose should

be paid to them out of the property. He gave " the use and income " of all his real and personal property to his wife " during her life," or until after his death she marries, in which case he gave to her $10,000 in lieu of all dower, to be paid to her by his executors, who were in terms authorized to dispose of the property to pay this sum or the legacies given to his sons, and the executors were authorized to change investments of the testator's property or " dispose of all or any part of it," and invest the proceeds as specified. By the codicil the testator nominated and appointed the executors named in the will as his trustees " for the purpose of carrying out any of its provisions." In an action to obtain a judicial construction of the will, *held*, that a valid trust was created to continue during the life or widowhood of the testator's widow.

After the provisions above stated the will contained this clause: " Upon my wife's decease the use and income of all my estate, subject to the above provisions, to my two sons, share and share alike; and upon the decease of my sons I give, bequeath and devise to their heirs, should both have heirs, their father's portion only; * * * and in case of one having no heirs; then to the heirs of the other; * * * and if both shall have no heirs then as the law directs." *Held*, that the provision was void, as it unlawfully suspended the power of alienation for a period beyond two lives; and that the residuary estate remaining after the death of the testator's widow should be divided as in case of intestacy.

(Argued February 4, 1887; decided March 15, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of January, 1886, which affirmed, so far as appealed from, judgment entered upon a decision of the court on trial at Special Term.

This action was brought for the purpose of obtaining the direction of the court in regard to certain questions arising on the will of Mortimer Ward, deceased, and a codicil thereto.

The plaintiff is his widow and the executrix of the will. The defendants are De Witt Clinton Ward, executor and brother of the deceased, Walter Edmund Ward and De Witt Clinton Ward, his only children and Abbey P. Ward, the mother, Sarah Brindley, the aunt, and Henrietta B. Ward, the sister of the testator, and beneficiaries under his will. The defendants appeared and answered separately. A trial was had at

the Special Term, and from the judgment there rendered, De Witt Clinton Ward, the son, alone appealed.

The material clauses of the will are as follows: "My will is, that all my just debts and funeral charges shall, by my executors, hereinafter named, be paid out of my estate as soon after my decease as shall by them be found convenient. I give and bequeath unto my beloved wife, Mary Jane, all my household furniture, and to her the use and income of all my real and personal estate during her natural life, should she not marry again, subject to the necessary expenses of living, which includes everything that may be required for my two sons, De Witt Clinton and Walter Edmund, until they arrive at the age of twenty-one years, if it should be necessary, and the necessary expenses for good schooling and a collegiate education, if either or both should desire it, without any reference to their intention of following a profession.

" And further, upon their arriving at the age of twenty-five years, I desire that each should have, in real or personal estate, equal to $10,000, or instead, an equivalent in money of $10,000, and my executors are authorized to dispose of any of my property to pay these legacies. In case I should have other heirs, they are to be treated the same as those mentioned, and share and share alike. And further, I desire that such sums, from time to time, as may be necessary and deemed advisable, be paid to my mother, Abby P. Ward, my aunt, Sarah· Brindley, and my sister, Henrietta B. Ward, should she remain single, that they or either of them may not want for the necessaries of life. And upon my wife's decease, the use and income of all my estate, subject to the above provisions, to my two sons, share and share alike, and upon the decease of my sons, I give, bequeath and devise to their heirs, should both have heirs, their father's portion only, share and share alike, and in case of one having no heirs, then to the heirs of the other, share and share alike, and if both should have no heirs, then, as the law directs. And should my wife marry again, I give and bequeath to her, in lieu of all dower, $10,000 in money, to be paid to her by my executors, hereinafter

named, and they are authorized to dispose of any of my property to pay the amount.

"Should my executors deem it necessary and advisable for the better security and interest of my estate to change the investment of my property, they may dispose of all or any part of it, and invest the proceeds in United States government, New York State or New York city bonds, registered, or on good bond and mortgage, or New York city, or Brooklyn city improved property, in sums of not more than $10,000 each, upon property at a moderate value worth at least double the amount.

"I hereby appoint my beloved wife Mary Jane, executrix, and my brother, De Witt Clinton Ward, executor of this my last will and testament."

The following are clauses of the codicil:

"I desire that my sons shall each receive the sum of $10,000, either in property or money, when they arrive at the age of thirty years, instead of twenty-five, as mentioned above.

"I do nominate and appoint my executors named in the above will, as my trustees, for the purpose of carrying out any of its provisions."

*James M. Hunt* for appellant. The will of Mortimer Ward suspends the power of alienation of a portion of the estate for a greater period than during the continuance of two lives in being at the death of the testator and is void. (*Storm* v. *Storm*, Daily Reg. Jan. 19, 1887; *Knox* v. *Jones*, 47 N. Y. 389; *Colton* v. *Fox*, 67 id. 348; *Smith* v. *Edwards*, 88 id. 92, 103, 109; *Purdy* v. *Hayt*, 92 id. 446, 437.) The will does not create a valid express trust. (*Verdin* v. *Slocum*, 71 N. Y. 345; *Monarque* v. *Monarque*, 80 id. 320; *Roseboom* v. *Roseboom*, 81 id. 356; *Campbell* v. *Beaumont*, 91 id. 464; *Smith* v. *Van Ostrand*, 64 id. 278-282; *In re Fox*, 52 id. 530, 536; *Dill* v. *Wisner*, 88 id. 153; *Heermans* v. *Robertson*, 64 id. 332, 343; *Heermans* v. *Burt*, 78 id. 259.) The recommendations of the testator in regard to his mother, aunt and sister have no binding legal force. (*Beekman* v. *Bonsor* 23 N. Y. 298, 306.)

*Geo. G. De Witt, Jr.,* for respondent. The will and codicil are to be regarded as a single instrument, and their various clauses must be construed in connection with each other. (*Westcott* v. *Cady,* 5 Johns. Ch. 334; *Howland* v. *Union Theol. Sem.,* 5 N. Y. 193; *Morse* v. *Morse,* 85 id. 60.) The fact that there is no express devise to the executors in trust is immaterial. No devise in express words is necessary to create a trust estate. (*Robert* v. *Corning,* 89 N.Y. 225.) To create a trust it is not essential to use the words " trust" or " trustee;" or that the authority to receive rents and income should be conferred in express language. Where it appears to have been the intention of the testator, as gathered from his will, that the income given to one by the will is to be received by the beneficiary through the medium of an executor, a trust is established. (*Craig* v. *Craig,* 3 Barb. Ch. 76; *Leggett* v. *Perkins,* 2 N. Y. 297; *Savage* v. *Burnham,* 17 id. 561; *Tobias* v. *Ketcham,* 32 id. 319; *Vernon* v. *Vernon,* 53 id. 351; *Low* v. *Harmony,* 72 id. 408; *Morse* v. *Morse,* 85 id. 53; *Marx* v. *McGlynn,* 88 id. 357; *Robert* v. *Corning,* 89 id. 225; *Hathaway* v. *Hathaway,* 37 Hun, 265.) There is no illegal suspension of the power of alienation for a period beyond two lives. The trusts for the two sons, though embraced in a single fund, are distinct and separable trusts and terminate at their deaths, respectively. (*Savage* v. *Burnham,* 17 N. Y. 561; *Stevenson* v. *Lesley,* 70 id. 512; *Monarque* v. *Monarque,* 80 id. 320; *Wells* v. *Wells,* 88 id. 323.) The provisions in favor of Abbey P. Ward, Sarah Brindley and Henrietta B. Ward are legal and valid provisions and capable of being carried into effect. They do not create any trusts, but merely charges upon the interests of the several beneficiaries under the trusts. (*Johnson* v. *Cornwall,* 26 Hun, 499; *Tolley* v. *Greene,* 2 Sandf. Ch. 91; *Thompson* v. *Carmichael,* 3 id. 120; *Forman* v. *Whitney,* 2 Keyes, 165; *Lawrence* v. *Cook,* 32 Hun, 126.) In the provision as to remainder, the word ' heirs" is equivalent to "children" or " descendants." (*Hurd* v. *Horton,* 1 Denio, 165; *Vannorsdall* v. *Vandeventer,* 51 Barb. 137; *Scott* v. *Guernsey,* 48 N. Y 106; *Lytle* v. *Beveridge,* 58 id. 592; *Wead* v. *Cantwell,* 36 Hun, 528.)

DANFORTH, J.    The testator died in August, 1884, leaving a will and codicil, which were duly admitted to probate, as a will of real and personal estate. These, under established rules, are to be taken as one instrument and construed together as expressing the intent of the testator. If in one, therefore, the omission of certain technical words gives color to the contention of the appellant that no express trust is created, the other declares the design of the testator that the executor and executrix shall take the residuary estate for the object declared and set forth in the will, and it is sufficient if from the two instruments it can be implied that his intent was to establish a trust. (*Morse* v. *Morse*, 85 N. Y. 53.)

By the will he appoints his wife executrix and his brother executor, and by the codicil he says, " I do nominate and appoint " them " as my trustees for the purpose of carrying out any of its provisions." In the first place it would be difficult, if not impossible, to carry into effect the plan devised by the testator, except through the intervention of some third person who might collect, manage and retain his property until the time arrived for final distribution. Such functions are imposed on the executors. They are to pay the debts of the testator out of his estate, as soon " as shall by them be found convenient.' Each son is to have in property or money $10,000 on arriving at the age of thirty years. It was also the intention of the testator to provide for the support of his mother, his aunt and his sister, out of the property, and that so much as might be necessary should be paid to them for that purpose. To his wife the testator gave all his household furniture, " and the use and income" of all his real and personal estate " during her life," or " until after " his " death she marries," but in that case " in lieu of all dower, $10,000 in money to be paid " by his executors, and they are in terms authorized to dispose of any of his property to pay this sum, or to pay the legacies given to his sons. And although, as we have seen, his wife was to have the income of his estate, the executors are authorized, in their discretion, " to change the investment of " the testator's property, or

dispose of all or any part of it, "and invest the proceeds" in
United States government, or New York State, or New
York city bonds, registered, or on bond and mortgage. Upon
his wife's decease the testator gives the "use and income" of
his estate, subject to diminution by the support of his relatives
above named, and the payment, when due, of the legacies to
his sons, to those sons, "share and share alike, and upon the
decease of his sons, to their heirs, should both have heirs,
their father's portion only, and in case of one having no heirs,
then to the heirs of the other, share and share alike, and if
both should have no heirs, then as the law directs."

It is plain, therefore, that the executors are to have the
management and direction of, and title to the property not
specifically bequeathed, until the children attain the age of
thirty years, and upon their death only the residue goes to
whomsoever shall be entitled to it in remainder.   The execu-
tors may not only invest, but reinvest, and in whose name, if
not their own, shall the government, State or city securities
be registered?  They may also sell any part of the estate as
in their judgment becomes necessary — they are to divide,
therefore, they are to receive the income.

By these incidents the case seems to be brought within the
rule that when the duties imposed are active and render the
possession of the estate convenient and reasonably necessary,
the executors will be deemed trustees for the performance of
their duties, to the same extent as though declared to be so by
the most explicit language.   (Tobias v. Ketchum, 32 N. Y.
319; Robert v. Corning, 89 id. 225.)

The remaining question has been presented with much
earnestness on the part of the learned counsel for the appel-
lant, and is of greater difficulty.   His contention is, that the
power of alienation of a portion of the estate is illegally sus-
pended for a period beyond two lives, and the argument is
placed on words already quoted.   As before suggested, the
trust created by the testator will continue after the wife's death
and during the lives of the two sons.   But upon the death of
either, the children of the one dying, if he has any, will be

entitled to his share, but if he has none, then the heirs of his brother will be entitled to it, and upon the death of that brother, leaving heirs, the same result follows. Or both dying without heirs, the estate must go where the law directs. It follows that the property cannot be sold except for the purposes of the trust during the life of the widow. That is a suspension for one life. It must remain undisposed of during the life of the son first dying, that is the second life, and still undisposed of during the life of the other son; for the time fixed for distribution is the death of both sons. That makes the third life, and it is clear that the suspension of absolute ownership will or may exceed a longer period than the continuance of two lives. All these lives were in being at the time of the death of the testator, and must terminate not only as a condition precedent to the taking effect of the gift over, but before it can be known who will be entitled ultimately to take. This limitation is too remote and renders the disposition void. (1 R. S. 773, § 1; *Knox* v. *Jones*, 47 N. Y. 389; *Colton* v. *Fox*, 67 id. 348; *Smith* v. *Edwards*, 88 id. 92; *Bailey* v. *Bailey*, 97 id. 460.)

In *Monarque* v. *Monarque* (80 N. Y. 320) the widow had the first life estate, and at her death the four daughters of the testator took for life, and upon the death of any daughter the fee of one-fourth part at once vested in her children. In *Wells* v. *Wells* (88 N. Y. 323) there was a similar provision, first for the wife, then for the testator's children, but it was also provided that upon the death of either child leaving issue, such issue or next of kin should take his proportion. In neither case was the final disposition of the estate suspended beyond the first and second life, for that ending the share of the child dying was at once liberated from the trust, but in the case before us it is otherwise. The testator provides for the devolution of the share of the child dying to the heirs of that child, if any, but if not it is still to be held by the trustee for the children of the other son, and until it is seen that neither has issue does the trust terminate.

Another question is presented by the pleadings, and was

considered by the court below; that relating to the mother, aunt and sister of the testator, all beneficiaries under the will, but we understand from concessions of counsel on the argument of this appeal, that it is no longer deemed material by either party. Other questions raised by the pleadings and answered by the court below—become immaterial by reason of the death of the testator's widow unmarried, and still others are not presented on this appeal, but, on the question argued, we think a valid trust was created by the testator to continue during the life or widowhood of the plaintiff Mary Jane Ward (and she having died, that question even becomes unimportant), but as to the residuary estate then remaining, it should be divided according to the statute of distributions in cases of intestacy.

The judgment appealed from should be so modified, and as modified, affirmed, the costs of this appeal to be paid out of the estate.

All concur.

Judgment accordingly.