[S. F. No. 3490.   Department Two.—December 26, 1903.]

In the Matter of the Estate of JOHN S. HITTELL, Deceased. THEODORE H. HITTELL et al., Appellants, v. ANNA P. GREER, Respondent.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—CONSTRUCTION OF WILL —TENANCY IN COMMON OF DEVISEES—PRIOR DEATH OF DEVISEE— LAPSE OF BEQUEST.—Under the will of a deceased person, bequeath- ing all of his real and personal property to two devisees named, no joint tenancy is created or devise made to a class, with any right of survivorship, but the will creates a tenancy in common in the devisees; and where one of the devisees named died prior to the death of the testator the bequest to such devisee lapsed, and the half-interest devised to her should be distributed to the heirs at law of the testator.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person.   J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Theodore H. Hittell, for Appellants.

The devise vested an estate in common.   (Civ. Code, sec. 1350.)   The devise was to two persons named, and created a tenancy in common.   No general terms were used creating a class.   (*Estate of Morrison*, 138 Cal. 401; Page on Wills, p. 625, secs. 541, 542, 543; *Bill* v. *Payne*, 62 Conn. 140; *Rock- well* v. *Bradshaw*, 67 Conn. 8; *Frost* v. *Courtis*, 167 Mass. 251; *Dildine* v. *Dildine*, 32 N. J. Eq. 78; *Moffett* v. *Elmen- dorf*, 152 N. Y. 475.[1])   Where the devise is to persons named, the death of one of them before the death of the testator gives no right of survivorship, but the devise lapses.   (*Saxton* v. *Webber*, 83 Wis. 617; *Estate of Kimberly*, 150 N. Y. 90; *Sohier* v. *Inches*, 12 Gray, 385; *Savage* v. *Burnham*, 17 N. Y. 561, 575.)

Smith & Pringle, for Anna P. Greer, Respondent.

A class disposition is shown by the will to be the intention of the testator, which must control.   (*Hoppock* v. *Tucker*,

[1] 57 Am. St. Rep. 529.

59 N. Y. 202; *Crecelius* v. *Horst,* 9 Mo. App. 51; *Jackson* v. *Roberts,* 14 Gray, 546; *Page* v. *Gilbert,* 32 Hun, 301; *Anderson* v. *Parsons,* 4 Me. 486; *Wood* v. *Boardman,* 148 Mass. 331; *Schaffer* v. *Kettell,* 14 Allen, 528; *Stedman* v. *Priest,* 103 Mass. 293; *Dove* v. *Johnson,* 141 Mass. 287; *Swallow* v. *Swallow,* 166 Mass. 240; *Bolles* v. *Smith,* 39 Conn. 218; *Chase* v. *Peckham,* 17 R. I. 385; *Le Breton* v. *Cook,* 107 Cal. 410.)

McFARLAND, J.—The deceased died testate, and this appeal is by heirs at law from a decree of distribution by which the whole of the estate is distributed to the respondent, Anna P. Greer, a devisee named in the will. The contention of appellants is, that only one undivided one half of the property of the deceased went to the respondent under the will, and that the other half was undisposed of and vested in the heirs at law, and this contention must be sustained.

There was before the trial court a photographic copy of the will, and it is in the record on appeal. It is contended by appellants that a certain word in the will is "daughter" (in the singular), and by respondent that it is "daughters" (in the plural). The court below did not expressly find whether the word is singular or plural. The only evidence on the point—outside of what the will itself shows—is the testimony of one Ames, who was called by respondent as an expert on handwriting. He testified that the word "was as a physical fact written 'daughter' in the singular," and then went out of the realm of expert testimony to say that, taking the context, the grammatical construction of the sentence, etc., "he was of the opinion that it was intended to mean daughters." The court below must have treated the word as plural; for otherwise there would be no pretense for the theory upon which the decree rests. But as, in our opinion, the contention of appellants must be maintained whether the word be held to be singular or plural, we will not pass on that question, and for the purpose of this opinion will take it to be "daughters," and so write it in the part of the will hereinafter copied.

The will, omitting the parts which are merely formal, or not material here, is as follows: "I bequeath all my real and personal property to Anna P. Greer and Mary M. Greer with
CXLI. Cal.—28

whom I live at this house 1216 Hyde St., and whom I regard and treat as my adopted daughters. I give nothing to my brother Theodore because I suppose him to be rich; I give nothing to any of his children,—Catherine, Charles or Frank, because he can provide for them; I give nothing to my sister Mary H. Killinger or to her children, Charles, Flora and John, for a similar reason; and nothing to my niece Mary H. Kingbury because I suppose her husband can provide well for her.''

The will was made September 8, 1897, and the testator died March 9, 1901. Mary M. Greer, mentioned in the will, died on February 23, 1900,—more than a year before the death of the testator.

There were no findings or evidence of facts as to the circumstances under which the will was made that give any extrinsic aid to its interpretation. The will itself shows that at the time of its execution the testator and the devisees were living together at a certain place; and the only additional evidence as to that matter was, that they had been so living together for "some ten years." It also appears that Mary was "about forty years old," and that Anna was "older"; that they were sisters; that the testator continued to live with Anna until his death; that he and they were unmarried people, and that there "was no relationship of blood or marriage between said testator and either said Anna P. Greer or Mary M. Greer." These are the only facts not shown by the will, and they throw no light upon its meaning. What it means must therefore be gathered from what appears upon its face.

The first apparent and obvious impression which a reading of the instrument leaves on the mind is, that the will makes a devise to two persons, Anna and Mary, as tenants in common; that if they had both outlived the testator they would have taken as tenants in common, and if, afterwards, one of them had died, her estate would have gone to her heirs or devisees, and not to the other cotenant; and that, upon the death of Mary during the life of the testator the testamentary disposition to her failed or lapsed—in which event it went to the heirs at law of the testator. Our code expressly provides that "A devise or legacy given to more than one person vests in them as owners in common" (Civ. Code, sec. 1350); that

"An interest in common is one owned by several persons, not in joint ownership or partnership" (Civ. Code, sec. 685); that "A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy" (Civ. Code, sec. 683); and by section 686 of the Civil Code, that every interest created in favor of several persons is an interest in common, unless a joint interest created as provided in section 683 or held in partnership. By the will in question here no joint tenancy, or right of survivorship of any character, is declared or intimated. It creates a clear tenancy in common.

Counsel for respondent, as we understand them, do not seriously contend that the will creates the strict legal relation of joint tenancy. But they contend that their client gets the whole estate, not as a surviving joint tenant, but as the remaining person of a "class." Their contention is, that the devise was to Anna and Mary as a class, and that the case comes within the rule that where there is a devise to a class, those of the class who are in existence at the death of the testator take the whole estate. We think that this position is wholly untenable. The devise in the case at bar is simply to two named individuals, and there is no designation of a "class" within the meaning given that word by the authorities. The statement that the devisees were persons with whom he lived and treated as his adopted daughters is of no significance, except perhaps as a reason given for his bounty. A common instance of a devise to a class is where a testator gives property, generally to the "children" of a certain person, without naming them,—as to "the children of my brother John"; and in such a case it is held that the devise is to such children of John as will be in existence at the time of the testator's death. There are cases where in the devise the individuals and the class are both named,—as, for instance, where it is "Charles, James, and Robert, children of my brother John,"—and in such cases courts have had some difficulty in determining whether the devise was to the individuals named or to the class. In such a case, the general rule is, that the persons named take as individuals and not as a class, unless some other clause of the will, or some evidence outside of

it calls for a different construction. The result of the authorities—and counsel for each side have cited a large number of them—is correctly stated in Page on Wills (sec. 543) as follows: "Where there is a gift to a number of persons who are indicated by name, and also further described by reference to the class to which they belong, the gift is held *prima facie* to be a distributive gift and not a gift to a class"; and, after citations in his notes, he says: "In such cases if one of the beneficiaries dies before the testator, there is, therefore, no right of survivorship to the other named beneficiaries." Indeed, counsel for respondent admit that "a denominative gift to members of a class, without more, is not a gift to the class." Therefore, in the case at bar, even if a class had been named, the gift would have been to the individuals, because there is nothing in the other parts of the will, or in any extrinsic evidence, showing a different intent, and there are no operative words creating any right of survivorship. But, as before stated, there was no class named; and this fact is an insurmountable obstacle in the way of respondent's contention.

Although the will has no operative words to create anything other than a tenancy in common, it is contended that a right of survivorship should be judicially forced into it in order to carry out the intent of the testator; because, it is said, the reference in the will by the testator to his relatives, who were his heirs at law, showed that he did not intend that they should have any of his property, while if there be no survivorship one half of his estate would go to such heirs. We see no merit in this contention. The will was made in view of conditions existing at the time of its execution; and as he gave all of his property to the two women, both of them living, of course he intended at that time and under existing circumstances that his heirs should take nothing. It was quite natural that, having given nothing to any of his blood relatives, he should state his reasons for his conduct in that respect. These reasons did not intimate any hostility to his relations; they were simply that he supposed them to be well provided for financially. As in the case of innumerable wills, the testator did not anticipate changed conditions, and did not provide for the event of the death during his lifetime of one of the named devisees, which he could easily have done,

if he so desired, by giving the property to them or to the survivor of them. What his actual intent may have been after the conditions were changed by the death of Mary we have no means of knowing, except from the fact that he allowed the will to stand as originally executed. He may have thought that one half of his estate would be sufficient for the wants of the remaining woman. At all events, we must apply the law to the will as it reads, and to the fact of the death of Mary before that of the testator, and thus applying it, the conclusion clearly follows that the living devisee, Anna, took one undivided half of the estate, and that the other half vested in the heirs at law.

The decree of distribution appealed from is reversed.

Lorigan, J., and Henshaw, J., concurred.