BRUNSON B. MONYPENY et al., by ALPHEUS H. FAVOUR,
Their Guardian ad Litem, Appellants, *v.* WILLIAM
MONYPENY, as Executor and Trustee under the Will of
WILLIAM MONYPENY, Deceased, et al., Respondents.

Will — construction of foreign will transferring real property
within this state — when demurrer in action for construction of
a will cannot be sustained on ground that there is no practical
question before the court.

1. The Code of Civil Procedure (§ 1866) expressly authorizes an
action to determine the validity and construction, or effect, of a
will under the laws of this state, of a testamentary disposition of
real property situated within it, and though the will was made in
another state, its interpretation and effect, so far as it relates to
the real property within this state, is to be determined by the
courts of this state, and their decision is conclusive.

2. In an action brought for construction of a will in which it was
held in the Supreme Court, on demurrer to the complaint, that
any decision of the courts of this state would be without effect,
and the judgment entered on the demurrer is sought to be sus-
tained on the ground that there is no practical question before this
court, *held*, that the questions presented are not frivolous, and
that they are entitled to consideration and decision.

*Monypeny* v. *Monypeny*, 136 App. Div. 677, reversed.

(Argued January 26, 1911; decided May 2, 1911.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the second judicial department,
entered April 9, 1910, which affirmed a final judgment
entered upon a decision of the court at Special Term sus-
taining demurrers to the complaint.

The nature of the action and the facts, so far as material,
are stated in the dissenting opinion.

*Alpheus H. Favour* and *John J. McKelvey* for appel-
lants.    The land in Westchester county will only pass
under the will of the testator when and after it is shown
that the will, though made by a resident of Ohio and giv-

ing the land to trustees in Ohio, is a good and valid will according to the laws of New York, and that the testamentary disposition of real property in this state is a good and valid testamentary disposition according to the laws of New York. (Code Civ. Pro. §§ 2611, 2694; *Vogel* v. *Lehritter*, 139 N. Y. 223.) This action may be brought under section 1866 of the Code of Civil Procedure. (*Whitney* v. *Whitney*, 63 Hun, 59; *Mellen* v. *Mellen*, 139 N. Y. 210; *Higgins* v. *Downs*, 101 App. Div. 119; *Drake* v. *Drake*, 41 Hun, 366; *Tonnele* v. *Wetmore*, 195 N. Y. 436.)

*W. C. Prime, W. W. Lancaster* and *Clifton P. Williamson* for respondents. It does not appear upon the face of the amended complaint that the plaintiffs have any interest in the real property alleged to be situated in the state of New York such as entitles them to bring a proceeding for the construction of the will. (*Matter of Murray*, 124 App. Div. 548; *Marlett* v. *Marlett*, 14 Hun, 313; *Matter of Mount*, 107 App. Div. 1; 185 N. Y. 162; *Bailey* v. *Briggs*, 56 N. Y. 407; *Bowers* v. *Smith*, 10 Paige, 193.) This action cannot be maintained under section 1866 of the Code of Civil Procedure. (*Tonnele* v. *Wetmore*, 195 N. Y. 436; *Mellen* v. *Mellen*, 136 N. Y. 210; *Wager* v. *Wager*, 89 N. Y. 161; *Dill* v. *Wisner*, 88 N. Y. 153; *Higgins* v. *Downs*, 101 App. Div. 119; *Horton* v. *Cantwell*, 108 N. Y. 255; *Matter of Tatum*, 169 N. Y. 514; *Matter of Tienken*, 131 N. Y. 391; *Scholle* v. *Scholle*, 113 N. Y. 261; *Chamberlain* v. *Taylor*, 105 N. Y. 185; *Westervelt* v. *Mahony*, 56 Misc. Rep. 409.)

CULLEN, Ch. J. The fate of this litigation has been a peculiar one. When the case reached the Appellate Division on demurrer to the first complaint in the action, one-half the court sustained the demurrer practically on the ground that the courts of this state had no jurisdiction of the matter in controversy, while the other half sustained it on the ground that the validity of the

provisions of the will was too clear for discussion and the questions sought to be raised were frivolous.  (131 App. Div. 269.)  On the second appeal to the Appellate Division the demurrer seems to have been upheld on the ground first stated, the court being of opinion that any decision of the courts of this state would be without effect.  The judgment there entered is now sought to be sustained on the ground that there is no practical question before us.  Let us see.

The will is drawn with a prolixity of language and confusion in thought and in expression approximating to genius, and the complaint in the action is entitled to the same high commendation ; nevertheless, it states sufficient to require the judgment of this court, to wit : a will of real estate within this state and a demand for its interpretation as to validity and effect, unless the construction of the will, as is claimed, presents no practical question. The Code of Civil Procedure (§ 1866) expressly authorizes an action to determine the validity and construction, or effect, under the laws of this state, of a testamentary disposition of real property situated within it.  There can be no question that, though the will was made in Ohio, its interpretation and effect, so far as it relates to the real property within this state, is to be determined by the courts of this state and that their decision is conclusive.  (*Peck* v. *Cary*, 27 N. Y. 9.)  The rule justifying the maintenance of such an action is well stated in *Horton* v. *Cantwell* (108 N. Y. 255) by Judge PECKHAM : "There must be some color of a question for construction before the court can be called upon to construe the devise."  In that case the court refused to act on the ground that, under no construction of the will, could the plaintiff be entitled to the possession of a remainder in the property upon her own demise.  In determining whether the plaintiffs have, in any view, a present interest in the real property within this state I shall assume that the will did not create an equitable conversion; for, even if we should think it did,

the fact that two judges of the court below not only thought there was no equitable conversion, but that the claim to that effect was frivolous, at least makes the question a debatable one worthy of adjudication by the courts.

We now turn to the trust created for the benefit of the plaintiffs' father, the testator's son. What is meant by the expression "to raise a trust?" It is certainly inartificial, and possibly the subject of differing interpretations. I think the intention of the testator was to give one-fifth of his estate, both real and personal, to his trustees in the trust directed by his will; for, on the death of the equitable life tenant, he provides for transferring and conveying, in fee, the corpus of the trust estate to the remainderman, which expression clearly contemplates that the trust estate might contain realty. Now, this conveyance is to be made to the children of the life tenant upon the youngest child attaining his majority ; in the meanwhile the income to be paid to them. But there is no provision authorizing the trustees to collect the rents and profits of the real estate, and without such direction, either express or implied, the statute vested the legal estate in the plaintiffs upon the death of their father and entitled them to possession. (Real Property Law, § 73 ; *Denison* v. *Denison*, 185 N. Y. 438.) Surely, the question whether there is an implied direction to collect the rents is fairly debatable.

But there is a still more serious objection to the validity of the continuing of the trust. The statute forbids a suspension of the power of alienation, except during the continuance of two lives in being at the death of the testator, and the validity of the provisions of the will is to be determined, not by what has happened but what might have happened under them. Plainly, children of his son might be born after the testator's death. This renders the trust void and the plaintiffs may be now entitled to the possession of the property. It is true, there is one exception to this absolute rule prescribed by statute.

That is, "a contingent remainder in fee, may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited, shall die under the age of twenty-one years, or upon any other contingency, by which the estate of such persons may be determined before they attain their full age." (1 R. S. part 2, ch. 1, art. 1, section 16.)  This exception, however, would not save this will, because the remainder which each of the several children would be entitled to, is not given over on his failure to arrive at the age of twenty-one, but on the failure of the arrival of the youngest of the children at the age of twenty-one, a provision not within the exception.   This objection also disposes of the validity of the attempted bequest over upon the death of the sons and their issue before the termination of the trust.   The result is that it may be at least plausibly if not rightly argued that, under the will and laws of this state, the plaintiffs, on the death of their father, became seized in fee simple of the real estate within this state. (*Radley* v. *Kuhn*, 97 N. Y. 26; *Livingston* v. *Greene*, 52 N. Y. 118, 123.)  It is true that this result would not necessarily destroy a discretionary power of sale in the executors, but the right to share in the proceeds of the sale depends upon the right to the lands sold, and it is the courts of this state, not those of Ohio, that are to determine the rights of the parties.

I think there is more in this case than has been appreciated, and that the questions presented by it are entitled to at least consideration and decision; and that, as some of the members of the court share the views I entertain as to the effect of this will, the questions cannot be said to be frivolous or not practical.   If the question whether the plaintiffs are now seized in fee of an undivided interest in the real estate is not a practical one, pray what would be such?

The judgment should be reversed and judgment ordered for plaintiffs on the demurrer, with costs in all courts,

with leave to defendants to withdraw demurrer and serve answer within twenty days on payment of costs.

CHASE, J. (dissenting).  William Monypeny died a resi-. dent of Columbus, Ohio, September 12, 1899, leaving a will dated September 23, 1895, and a codicil thereto dated September 7, 1899, which will and codicil were admitted to probate as the will of said William Monypeny in the county of Franklin, Ohio, October 18, 1899, and a certified copy of said will was filed in the office of the surrogate of the county of Westchester January 19, 1907.

The testator left him surviving a widow, Maria Monypeny, and four children, William Monypeny, Jr., George B. Monypeny, Perin B. Monypeny, and Sallie Newsom, now Beckwith, and one grandchild, Mabel Monypeny, now Huntington, the only child of a deceased son, which four children and said grandchild were the only heirs at law and next of kin of the testator.

The testator died possessed of a large estate, consisting principally of real property, all of which was situated in the state of Ohio except a farm of 328.89 acres situated wholly or in part in the city of Yonkers, in this state. The real property of said testator was of the value of about $900,000, and the value of said farm in this state was about $300,000.

The said George B. Monypeny died September 4, 1903, leaving a wife and the two plaintiffs in this action, who are infants and the only heirs at law and next of kin of said George B. Monypeny.  The said George B. Monypeny died a resident of the state of Ohio and he left a will which has been admitted to probate in that state.  In and by his will he gave all of his property "Except what I (he) may be entitled to under the will of my (his) deceased father, William Monypeny," to his wife abso- lutely.  All of the parties to this action are non-residents of this state.

This action is brought under section 1866 of the Code

of Civil Procedure, the alleged purpose thereof being stated in the prayer for relief in the complaint as follows: "Wherefore, plaintiffs pray judgment that the validity, construction and effect of the provisions of the said Last Will and Testament of the said William Monypeny deceased, so far as they relate to the disposition of the said real property situated in the County of Westchester, this State, may be determined and that the defendants herein may be perpetually enjoined from making any claim in contravention to the determination of this court.

"And further that it may be adjudged and decreed that should the court decide there has been, under the will, an implied equitable conversion of the real property in this State, that then the Trustees be instructed to sell and convey the same at their discretion, conveying good title thereto, to the end that the proceeds thereof may be taken by them to the State of Ohio."

It is alleged in the complaint that the trustees "Are now in possession of all the trust property and estate affected by the terms of said last will and testament, including the property situated in this State." The complaint also recites that a contract to sell part of said farm was entered into by and between said trustees and the city of Yonkers, and that two corporations engaged in the business of insuring titles to real property for a consideration, refused to insure the title to the property described in said contract unless the deed from the trustees was accompanied by a deed from the heirs at law of William Monypeny, deceased, and that the trustees without further controversy obtained for said city in addition to the deed signed by them as trustees a deed from said heirs at law, and such deeds were then accepted by the city and thereby were sold 33.56 acres of said farm.

The complaint further alleges that such facts show that "there is a question as to whether title passed to this property under the will." The reason why the title guaranty companies refused to guarantee the title to the lands

sold to the city of Yonkers without a deed from the heirs at law of William Monypeny, deceased, does not appear.

Said will provides that "All the rest, residue and remainder of my estate real, personal and mixed I give, bequeath and devise unto my wife Maria Monypeny, and Logan C. Newsom of the city of Columbus, their successors and assigns, and the survivor of them, her or his heirs and assigns, but in trust nevertheless for the performance of this my last will and testament concerning the same."

It then provides with considerable detail the terms of the trust and directs the trustees in regard to their duties under the trust and as to a division, continuance and investment of the same. 1. It directs that "Two trust funds of Thirty thousand dollars ($30,000) each shall be raised out of" the estate and invested for the respective equal benefit of his son Perin B., and his granddaughter Mabel.

2. It further provides: "I hereby order and direct that a further Trust shall be raised out of my estate and be held and invested by my Executors, who, for the purposes and in carrying out the provisions of This Trust shall act as Trustees as well but without extra or additional compensation thereof thereunder — the two whole, full and equal shares, and all and singular of the property thereof, and in amounts equal, one with the other, of my entire estate, except and after deducting the special bequests and devises made to my wife and to my daughter, in items Second and Third respectively, of this will, for the use, benefit and behoof, after first charging them respectively with all advances theretofore had, of my two sons William Monypeny and George B. Monypeny, their heirs and assigns forever, and the property thereof to be given, transferred and conveyed in fee to their legitimate children at their death by right of representation, on the youngest child of each attaining his or her majority or becoming of age under the Laws of the State of Ohio, except as hereinafter provided. The net income arising

7

therefrom after the payment of all taxes, assessments, proper insurance and repair charges, shall be paid quarterly, or at such convenient times as may in the judgment of said Trustees be proper, to said William Monypeny or George B. Monypeny, or to their heirs. I also order and direct hereunder that the Trustees of the Trusts under this second clause of this fourth item of my Will may make such advance payment or payments from the principal of said Trusts, charging each respective Trust therewith in accordance with the representation thereof, and for that purpose keeping the accounts of each Trust separate and distinct; upon a child as aforesaid of either one of my said sons William and George arriving at age, and needing property or funds, or both, in the judgment and sound discretion of said trustees, with which to engage in business or otherwise improve and advance, properly, his or her condition, said Trustees may make a proper advance to such child aforesaid. Such advancement having been made, the share out of which it shall have come shall then be charged therewith and thereto and the receipt from such son, issue, or representative by right of representation, having received such advancement, shall be a full and complete acquittance, release and relinquishment to and from any further obligation on the part of said Trustees in that behalf in said amount so advanced. In the event that one or both of my sons William and George die without issue of their body, or the issue of one or both dies, or die without issue, said share or shares arising out of said Trust shall be paid to my estate except one equal distributive share thereof which shall go to and become a part and share of the trust hereof of the son or his issue then living. Should both said sons and their issue all be dead before the execution and termination of this Trust then said fund thereof shall vest in and ascend to my children then living or to their issue by right of representation in equal distributive shares."

3. It further provides that the remainder shall be conveyed on a day named absolutely in equal shares to his two children, Sallie and Perin B., and his granddaughter Mabel, and that as to them there shall then be a final accounting.

4. It gives his executors and trustees power to sell real estate by a provision as follows: "I give and confer to and upon said executors and upon the trustees or the trustee acting under this will full power and authority by public sale or private contract and in such way and in such manner and at such price and at such prices as they or he shall deem expedient to make sale of and convey all the real estate of which the trust premises are or shall be composed; and to do all needful acts requisite to convey the title thereof to a purchaser or purchasers and to invest the proceeds arising from such sale or sales in other real estate or any personal property with like power and to dispose of every, any, and all real estate under which the trust premises or any part thereof shall be invested."

The trust provisions of the will are stated in much greater detail but need not be further quoted for the purposes of this opinion. By the codicil the trust provision above quoted for William Monypeny and George B. Monypeny so far as it relates to William Monypeny was revoked, and so far as it relates to George B. Monypeny was re-affirmed. William Monypeny was by the codicil included with his sister Sallie, his brother Perin B., and his niece Mabel in the division of the remainder as in the will stated.

Said section 1866 of the Code of Civil Procedure expressly provides that "The validity, construction, or effect, under the laws of the State of a testamentary disposition of real property situated within the State, or of an interest in such property, which would descend to the heir of an intestate, may be determined, in an action brought for that purpose, in like manner as the validity of a deed, purporting to convey land, may be determined. * * *"

Real property in this state when transferred by testamentary disposition must be so transferred in accordance with the laws of this state. (Decedent's Estate Law, section 47.)

If the construction of the will, so far as it relates to the real property in this state, is now a practical question for the plaintiffs, the complaint is not demurrable. In other words, the action may be sustained when the plaintiffs are interested in a practical existing question relating to real property in this state notwithstanding they are non-residents and notwithstanding the testamentary provision is a will executed and proven in another state or a foreign country. The action should not be sustained for the purpose of satisfying the curious or of advising persons who are in possible doubt as to what action, if any, they should take in another jurisdiction.

It is not clear what the real purpose of the plaintiffs is in bringing this action in this state. They do not assert a right or interest in the real property in this state as heirs at law of their father. It is assumed in the complaint that the right of their father as an heir at law of their deceased grandfather did not pass to them under their father's will. Their interest in the real property in this state, if any, comes to them under the will of their grandfather. The trustees do not ask for a construction of the will in question but join with other defendants interested under the will in demurring to the complaint.

Except for what is stated in regard to the title insurance companies requiring a deed from the heirs at law when a part of the real property was sold to the city of Yonkers, it does not appear that the trustees have had any difficulty about selling and conveying real property in this state.

It does not appear that the trustees now desire to sell the real property, or that if they desired so to do they would be prevented from so doing by the doubt suggested in regard to the construction of the will, or if such doubt is expressed that they could not obtain a deed from the

heirs at law of the testator to be used in connection with the deed from the trustees as was done when a part of such real property was conveyed as stated.

The complaint alleges that the trust is valid in Ohio, and that it is valid in this state, and it also alleges that the real property in this state is by the will converted into personal property.

The allegations of the complaint are numerous and long, and are principally devoted to statements of the failure of the trustees in Ohio to obey the instructions of the testator. Such questions should be presented to the courts of Ohio.

The plaintiffs are not in possession of the real property in this state, and it does not appear that they are now entitled to the possession of said real property or of any part thereof or interest therein. It is not an action to direct the trustees in regard to the trust.

There are, so far as affects the real property in this state and any interest of the plaintiffs therein, several suggested constructions of the will:

1. That the said trust for the plaintiffs is valid in this state but that the real property is not converted into personal property.

2. That the said trust for them is valid in this state and that the real property is converted into personal property by the terms of the will.

3. That the said trust for them is valid but that the plaintiff's interest in the corpus thereof is contingent upon one of them living until the termination of the trust.

4. That it is the duty of the trustees to "raise" the share for the benefit of the plaintiffs and that under the terms of the will they can "raise" the same from the property in Ohio.

5. That the said trust for them is void.

In the first suggested construction the trustees may sell the real property in this state before the termination of

the trust and in each of the first four suggested construc-
tions an action should not be sustained under the statute
at least before such termination of the trust.   In the fifth
suggested construction the plaintiffs have no interest in
the real property as heirs at law of their grandfather.

I am of the opinion that the plaintiffs' complaint does
not present a practical existing question requiring action
by the courts of this state in their behalf.

The right to maintain an action under said section of
the Code of Civil Procedure has frequently been consid-
ered by the courts and it has always been determined
that the right is dependent not alone upon some claim as
to the construction of the will upon which a fair argument
can be founded, but also upon one in which the plaintiff
is actually interested and which sooner or later will
require determination.   ·

If we assume that under the laws of this state the trust
for the life of George B. Monypeny is valid and that sub-
ject to such trust the corpus of the fund directed to be
held for George B. Monypeny and his heirs vested in his
children, subject to the power of sale contained in the
will, and that the proceeds of real property sold by the
trustees in this state will be subject to division in accord-
ance with the laws of this state, it is nevertheless quite
unnecessary and gratuitous at this time to consider
whether such assumption is the true construction of said
will, because it is a question that may never come before
the courts of this state for determination.   With the
crowded condition of our courts we should not unneces-
sarily assume jurisdiction of the action simply to advise
the courts of the state of Ohio what determination
should be made by them on the final accounting of the
trustees.

In *Horton* v. *Cantwell* (108 N. Y. 255) the plaintiff, the
only child of the testatrix, was interested as the life bene-
ficiary of a valid trust under her will.   There was a
bequest dependent upon the contingency of the plaintiff's

death without children and for the purposes of the discussion in the opinion it was assumed that such bequest was void. The plaintiff sought to construe the will under section 1866 of the Code of Civil Procedure and claimed to be the absolute owner of the estate or of certain specified parts thereof. The court say: "If this claim were even questionable, if it were possible to found a fair argument in relation to it, there would be ground for the plaintiff's contention that such an action as this would lie to obtain a construction of the devise. But it is not alone a case where a claim is made in regard to the character of a devise that the court under this section of the Code can take jurisdiction. There must be some color of a question for construction before the court can be called upon to construe the devise. * * * The testamentary disposition of real property, or of an interest therein, the validity, construction or effect of which may be determined under the above quoted section, and where its invalidity is sought to be determined, must be a disposition of some interest in real estate which may possibly be enjoyed in actual possession (if the invalidity of such disposition be decreed) during the lifetime of the person who seeks the aid of the court in construing the devise of such real estate or interest therein. In this case the contingency upon which alone the question can arise may never occur, for the plaintiff may marry and have children who (or their issue) may be living at her death, in which case they take the fee and the contingency never happens. It is not a case where any practical benefit can arise to the plaintiff in having this will authoritatively construed as to the devise of the real estate. * * * Upon the whole case we think there is no practical or present controversy to be determined, and the contingency may never arise in which the question can become a practical one, and even then, if it do hereafter arise, there is no certainty there will be any contest whatever in regard to it." (p. 265.) (*Matter of Mount,*

185 N. Y. 162, 168 ; *Tonnele* v. *Wetmore,* 195 N. Y. 436, and cases cited ; *Mellen* v. *Mellen,* 139 N. Y. 210.)

The judgment should be affirmed, with costs.

HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J. ; GRAY and HISCOCK, JJ., concur with CHASE, J.

Judgment reversed, etc.