[Civ. No. 2018.   Fourth Appellate District.—July 15, 1937.]

In the Matter of the Estate of GEORGE R. HARRISON, Deceased.   M. J. IRVING, Administratrix, etc., Appellant and Cross-Respondent, v. IRVING R. DALY et al., Respondents and Cross-Appellants.

Gray, Cary, Ames & Driscoll for Appellant and Cross-Respondent.

John M. McCorkle, Pillsbury, Madison & Sutro, Eugene M. Prince, Wright, Monroe, Thomas & Glenn, C. M. Monroe, Gerald C. Thomas and Anderson & Anderson for Respondents and Cross-Appellants.

BARNARD, P. J.—This appeal involves the validity of the trust provisions of the will of George R. Harrison, who died in San Diego on June 8, 1934, leaving a will executed on May 27, 1930.

Mr. Harrison, who was 78 years old when he died, was a bachelor and left no immediate family. He left an estate of the value of approximately $250,000 and after several minor bequests, including $5,000 ''to each of my four cousins, if living, to-wit, Clyde C. Potter of Waltham, Massachusetts, J. M. Potter of Corrina, Maine and another brother and sister of said cousins, the names and addresses of whom I do not now recall for the reason that it has been a great many years since I saw them'', he left the residue of his estate to the

respondent bank as trustee, the beneficiaries being Irving R. Daly and his wife and Theodore T. Johnston and his wife, all old and intimate friends of the testator, and the children or descendants of Theodore T. Johnston, the Dalys having no children. At the time of his death Mr. and Mrs. Daly were 55 and 53 years of age, respectively, and Mr. and Mrs. Johnston were aged 58 and 59, respectively. Six children of Johnston were living, the eldest being 37 years old and the youngest reached majority before the decree of distribution was entered. There was no issue of any deceased child of Johnston and four of Johnston's children had children of their own, aged up to 14 years.

The material trust provisions of the will are as follows:

"g. Said trustee shall pay three-fourths of the net income from said trust estate in monthly installments to the said Irving R. Daly if living, for the term of his natural life, and if not living, and after his death, said trustee shall pay such three-fourths of said net income in monthly installments to the said Georgie S. Daly, if living, for the term of her natural life;

"h. Said trustee shall pay the balance of said net income, and being the entire net income after the death of said Irving R. Daly and Georgie S. Daly, to the said Theodore T. Johnston if living, for the term of his natural life, and if not living, and after his death, said trustee shall pay such balance of said net income in monthly installments to the said Sadie Johnston if living, for the term of her natural life, and if not living, and after her death, said trustee shall pay such balance of said net income in monthly installments share and share alike to those of the issue of said Theodore T. Johnston who are from time to time living and the issue at such times living of such of said issue of said Theodore T. Johnston as are at such times deceased, by right of representation, until the arrival at the age of twenty-one years of the last of the said issue of the said Theodore T. Johnston to arrive at the age of twenty-one years or until the death of the survivor of the said issue of the said Theodore T. Johnston prior thereto;

"i. Upon the arrival at the age of twenty-one years of the last of said issue of said Theodore T. Johnston to arrive at the age of twenty-one years and upon the death of the survivor of the said issue of said Theodore T. Johnston prior thereto said trust shall *ipso facto* cease and determine and

said trustee shall thereupon convey, transfer and deliver the property belonging to said trust in fee share and share alike to those of the said issue of the said Theodore T. Johnston who are then living and the issue then living of such of said issue of said Theodore T. Johnston as are then deceased, by right of representation, and if none, then to the persons to whom, and in the proportions in which, the same would go by the laws of succession of the State of California then in force were my death to occur at such time.''

Briefly summarized, these provisions give the income for life to the Dalys and the senior Johnstons and upon the death of the survivor of them give the income to the issue of Theodore T. Johnston and to the issue of his deceased children until the youngest child is 21, whereupon the *corpus* of the estate is to be distributed to such of the children of Johnston as then survive and the issue of any deceased child, by right of representation, with a contingent remainder to the testator's heirs, as would be determined at that time, in the event all of the Johnston children had died before the last survivor of them reached the age of 21 years.

When a petition for distribution was filed by the executor, Clyde C. Potter filed an answer and objections thereto presenting the question of the validity of the trust provisions of the will and alleging that these provisions are void for the reason that they suspend the absolute power of alienation for a longer period than lives in being at the time of the creation of the trust, that the testator therefore died intestate as to that part of his estate, and that the same should be distributed to the heirs at law, who are three of the cousins referred to in the will, the fourth having died before the death of the testator. These contentions are based upon the possibility that under its terms the trust might extend for a period beyond lives in being, namely, during the minority of any children of Mr. Johnston who might be born after the testator's death. Such a possibility, while remote, could occur if Mrs. Johnston were to die and Mr. Johnston were to remarry, and the question whether this trust is forbidden by section 715 of the Civil Code is squarely presented.

After a hearing the trial court found that the provisions for the children of Theodore T. Johnston included and applied to any after-born children. It was held, however, that these trust provisions come within the exception to section 715, set forth in section 772 of the Civil Code, and are valid.

A decree of distribution was entered in accordance with the provisions of the will as thus interpreted, and this appeal followed. Clyde C. Potter died after the hearing and the administratrix of his estate was substituted as appellant herein. A cross-appeal was taken by the respondents from that part of the decree awarding to the estate of Clyde C. Potter the specific bequest of $5,000 given to him by the will, it being contended that he had forfeited that bequest under another provision of the will to the effect that ''Should any person directly or indirectly seek to . . . impair or invalidate any of the provisions (of my will) . . . or fail to contest, any such proceeding or endeavor to procure any portion of my estate in any manner other than as herein provided,'' such person should receive $1 in lieu of any other share or interest in the estate. Subsequently, the respondents moved to dismiss the main appeal on the ground that the appellant therein is not a party aggrieved by the decree of distribution, within the meaning of section 938 of the Code of Civil Procedure, for the reason that such appellant would in no event receive more than the $1 mentioned in that provision of the will. Both appeals and this motion were submitted together and will be herein considered.

Assuming, for the purpose of this decision, that after-born children of Theodore T. Johnston are included as beneficiaries, these trust provisions are void under section 715 of the Civil Code (*Estate of Van Wyck*, 185 Cal. 49 [196 Pac. 50]; *Estate of Maltman*, 195 Cal. 643 [234 Pac. 898]), unless they are within the exception furnished by section 772 of that code. This is the first and main question here presented. Although section 772 has been frequently mentioned, no prior decision in this state has interpreted its meaning or applied its provisions to a particular state of facts. While this situation adds to our difficulty it emphasizes the necessity of, and leaves the door open for, a construction in keeping with the purpose of such statutes and with the intention which this statute was designed to express. In urging that this trust is not within the exception provided by section 772 the appellant argues that public policy is opposed to any attempt to tie up property for long periods of time and that it is the duty of the court to place the strictest possible interpretation upon this statute in order to give effect to that policy. A brief consideration of the public policy in

this connection is not only proper, but may throw some light upon the purpose and meaning of this statute.

In *Estate of McCray*, 204 Cal. 399 [268 Pac. 647], the court said: "The rule against restraints on alienation has been, in some cases, confused with the rule against perpetuities; but the two rules, while having the same end in view, viz., that of preventing undue interference with the freedom of transfer of property, are of entirely different origin and application. The rule against perpetuities, engrafted upon our system by the constitution, relates only to future interests in property, the vesting of which is to be postponed beyond the allotted time. The rule relating to restraints on alienation, on the other hand, is statutory in origin, and has reference to an undue prevention of the transfer of estates already vested."

In *Estate of Hinckley*, 58 Cal. 457, the court quotes from Perry on Trusts, as follows: " 'For public policy is opposed to the perpetual settlement of property in families in such manner that it is forever inalienable, or inalienable so long as there may be a person to take answering the designation of some testator who may have died generations before. . . . Thus all future estates which arise by way of executory devise, conditional limitation, or shifting and springing uses, must vest within a life or lives in being at the death of the testator, and twenty-one years; and, in case the person in whom the estate or interest should then vest is *en ventre sa mere,* nine months more will be allowed; and all estates created as aforesaid, and so limited that they may not vest within that time, are void.' "

In *McArthur* v. *Scott*, 113 U. S. 340 [5 Sup. Ct. 652, 28 L. Ed. 1015], the court said: "To come within the rule of the common law against perpetuities, the estate, legal or equitable, granted or devised, must be one which, according to the terms of the grant or devise, is to vest upon the happening of a contingency which may by possibility not take place within a life or lives in being (treating a child in its mother's womb as in being) and 21 years afterwards."

In the instant case, as the youngest child of Theodore T. Johnston must be in being in the lifetime of his parent and that parent was born in the testator's lifetime, the devise to the children of Johnston, and the devise over upon the arrival of the youngest of said children at 21 years of age to the children of any child of Johnston who had died before

that time, must necessarily take effect, as to every devisee, within a life or lives in being and 21 years afterwards and, therefore, this trust does not violate the rule against perpetuities (*McArthur* v. *Scott, supra*; *Estate of Hinckley, supra*.) In *Manice* v. *Manice*, 43 N. Y. 303, in discussing a somewhat similar situation under a similar statute, although the facts and the statutes involved are not identical, the court said:

"These dispositions are not subject to the objection that they suspend the power of alienation beyond the prescribed period. The suspension must terminate at the expiration of two lives in being, and the further term of suspension caused by the contingent limitation which is to take effect upon the death, during the minority, of the child to whom the remainder in fee is first limited. This is within the limits intended and permitted by the exception contained in section 16. The revisers, by means of that section, intended to adopt the English limit of suspension, viz., lives in being and twenty-one years afterward, with a modification reducing the lives to two and providing that the twenty-one years, instead of being an absolute term, must depend upon the continuance of the minority of the person to whom the defeasible remainder in fee is limited. (See Revisers' Notes, 3 R. S., 571, 572, 2d ed.; 5 Stats. at Large, 306, 307.)"

While it has been the public policy to forbid the tying up of property for an undue length of time this policy, in its broader aspects, has included the allowance of such interference with absolute ownership for a reasonable time, such time having come to be fixed at common law and adopted in most of the states of this country as that of lives in being plus 21 years, plus the period of gestation. So far as public policy is concerned no reason appears why the period of suspension allowed should not be the same with respect to restraints on alienation as that allowed under the rule against perpetuities. However, and whatever the reason, a different rule governing restraints on alienation is established in this state by section 715. But an exception to that rule is specifically provided in a case coming within section 772, which reads:

"A contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited die under the age of twenty-one years, or upon any other contingency by which

the estate of such persons may be determined before they attain majority.''

Whatever the meaning of this language it would certainly not be opposed to the public policy involved in this general field of law if this section should be interpreted as, in practical effect, allowing the same suspension of the power of alienation in the particular cases coming under this section as that allowed by the rule against perpetuities with respect to the vesting of title as that rule came to be established at common law.

The interpretation thus suggested was apparently given to similar provisions of a New York statute, as shown by the above quotation from *Manice* v. *Manice, supra*. In that case the court further said:

''The objection that the persons to whom the remainder in fee is first limited, and those to whom the contingent remainder over in fee is limited, are not persons in being at the time of the creation of the estate (viz., the time of the death of the testator), is not supported by any provision of the statute. There is no prohibition against the limitation of such estates to persons not in being. The requirement that two lives, during which the suspension is allowed in all cases, should be those of persons in being at the time of the creation of the estate, is plainly expressed in the general provision. But the further suspension allowed by the exception is not stated to be upon any such condition. Such a restriction would be inconsistent with the purpose of the exception, and so limit its operation as to render it of but little avail.''

In discussing the same statutes in New York, in connection with the possibility of after-born children, the court said in *Adams* v. *Berger*, 18 N. Y. Supp. 33:

''But it does not follow from this possibility that the power conferred by the statute for the limitation of future estates in land has been transcended. . . . The preceding section prescribing this limitation is wholly qualified by the section succeeding it, and permits persons to be included within the provision contained in the will, who may be born after the decease of the testatrix, but prior to the decease of her daughter, the beneficiary under the will. . . . And the dependence of the estate upon these minorities distinguishes this case from *Ward* v. *Ward*, 105 N. Y. 68 [11 N. E. 373]. The power of alienation over the land, therefore, was no

further suspended by the will than during the life estate of the daughter of the testatrix who is to be benefited by the trust, and during the minority of one or more or all her children living at the time of her decease. This suspension of the power of alienation in no event could continue beyond the life of the beneficiary in the trust and the minority of her children. When that minority ceases to exist, the estate will be vested absolutely in the children becoming 21 years of age, or the ultimate contingent devisees, and the power of alienation be brought into existence. . . . In no event was the final vesting of the estate to the land to extend beyond the minority of the children of the daughter of the testatrix, and accordingly the directions given did not violate the restraint in this respect of the statute.''

While these New York cases are not controlling here, especially in view of the difference in statutes and in some of the facts involved, the reasoning there used is helpful and may well be applied here. The appellant relies upon one sentence in the opinion in *Monypeny* v. *Monypeny*, 202 N. Y. 90 [95 N. E. 1], which reads: ''This exception, however, would not save this case, because the remainder which each of the several children would be entitled to is not given over on his failure to arrive at the age of 21, but on the failure of the arrival of the youngest of the children at the age of 21, a provision not within the exception.'' After deciding that case upon other grounds the court suggested this as an additional reason. Nothing further is said upon the point and no reasons are given for the opinion thus expressed, or why one of the situations suggested would comply with the statutes, while the other would not. Not only is that case not controlling here, but we find no reasoning therein which is of assistance in our present problem.

■    Passing to the specific reasons suggested by the appellant as to why this trust is not within the exception allowed by section 772 it is first argued that the remainder in fee given to the Johnston children, if there is a survivor to take it at the time it would go into effect, is not a ''prior remainder in fee''. It is argued that both the remainder in fee given to the Johnston children and the contingent remainder in fee given to the testator's heirs, as then determined, are alternative remainders, that either one or the other takes effect, that both are created on the prior life estate of the Dalys and senior Johnstons and that there is, therefore, no

prior remainder in fee on which a contingent remainder in fee could be created. This argument is closely associated with another to the effect that an illegal remainder is always a nullity and that section 772, in declaring that a contingent remainder in fee may be created on a prior remainder in fee under certain circumstances, presupposes that the prior remainder in fee is itself valid. It is therefore argued that since the remainder in fee to the Johnston children would not in itself comply with section 715 it cannot be made valid by anything section 772 may provide with respect to the contingent remainder. We are not impressed with the argument that the remainder given to the Johnston children may not be considered a prior remainder within the meaning of section 772, upon which the contingent remainder to the heirs is created. The remainder given to the Johnston children is complete and absolute if and when it takes effect, and the only reasonable assumption is that the testator expected it to take effect. The contingent remainder to the heirs was not to take effect if any of the Johnston children survived until the time the trust was to end and the only reasonable view, as it seems to us, is that the remainder to the Johnston children is a prior remainder in fee, within the meaning of this section, upon which the contingent remainder to the heirs is created to take effect in the event the prior remainder fails for want of a survivor. ■ Nor do we think section 772 must be construed as requiring that any such provision for a prior remainder in fee shall be valid in itself and irrespective of the effect of section 772. If such a trust is good as to the contingent remainder it must be good as to the prior remainder, otherwise the entire trust would fail before it could be known whether or not the contingent remaindermen took anything. Section 772 does not purport to provide only for a "contingent" remainder, but for a complete disposition of property including both a prior and a contingent remainder. By the terms of the section the additional period during which the power of alienation may be suspended is that allowed in connection with the prior remainder, not to exceed the time when those remaindermen attain their majority. The statute applies to the prior remainder in fee as well as to the contingent remainder in fee, and makes both valid from their inception.

■ It is next urged that section 772 requires the contingent remainder to take effect "in the event that the per-

sons to whom the first remainder is limited die under the age of 21 years, or upon any other contingency by which the estate of such persons may be determined before they attain majority'', whereas under this trust the contingent remainder to the Harrison heirs may take effect even though the Johnston children did not die under the age of 21 and even though their estate (if any they have) may be determined after all of them but one have attained majority. It is argued that in order to be valid under this statute such a trust must provide for the vesting in each child of his share of the *corpus* of the estate as he comes of age, and that this trust is void since it continues until the youngest possible child of the Johnstons becomes 21 years of age. There is nothing in section 772 which says that the estate of each of the prior remaindermen must vest absolutely as he comes of age, and we would have to add something to the statute to give it the effect suggested by appellant. Under the plain language of this section the contingent remainder is to take effect in the event that ''persons'' given the first remainder die under the age of 21 or upon another contingency by which ''the estate'' of ''such persons'' may be determined before ''they'' attain majority. Under the language used the contingent remainder may take effect in either of two events, (1) if all of the persons given the first remainder die under the age of 21 and (2) under any other circumstances by which the estate of such persons may be determined before ''they attain majority'', or in other words, before they all attain majority. This is a common instance of a devise to a class without naming them (*Estate of Hittell,* 141 Cal. 432 [75 Pac. 53]). We think section 772 refers to the prior remaindermen as a class, and we cannot interpret the language used as necessarily requiring that the contingent remainder in fee be a variable quantity diminishing gradually as each of the prior remaindermen in fee attain majority, nor as requiring that the prior remainder in fee must be gradually and by piecemeal vested in the possession of each respective remainderman as he comes of age, in order to make the trust valid under this section.

It is next urged that section 772 applies only to real property since it is contained in a title of the code headed ''Estates in real property''. It has been held that section 715 and section 771 may be operative as to real, mixed and personal property (*Estate of Walkerly,* 108 Cal. 627

40

[41 Pac. 772, 49 Am. St. Rep. 97]). We think a sufficient answer to this contention is the fact that section 715 is in a portion of the code relating to property in general and by reference therein section 772 is in effect made a part thereof.

■ The general policy of our law with respect to tying up estates is to permit this to be done for lives in being, plus 21 years thereafter. The provisions of section 715 constitute an exception to the general policy which exception does not apply in a case covered by section 772. In our opinion section 772, without doing away with section 715 where that section is applicable, conforms to the general policy by permitting the power of alienation to be suspended for a longer period in the one instance where property is so disposed of that it must vest absolutely in the remaindermen when the youngest or survivor of that class reaches the age of 21 years, or vest absolutely in contingent remaindermen on the failure of anyone of the first class to qualify within that time. This has the effect of permitting a complete disposition of an estate which, in any event, must vest absolutely within the time allowed by the rule against perpetuities. The desire on the part of a testator to provide for a life estate in his children with a remainder over to his grandchildren is common. It is not abnormal or unnatural that such a testator should desire to vest the estate absolutely in his grandchildren only when the youngest of them reached his majority. Nothing could be more natural than for such a testator to provide for this, and for a contingent remainder to others in the event none of his grandchildren reach that age. Whether or not the framers of the language used in section 772 had this particular set of circumstances in mind we think the language used is broad enough to include that purpose and effect, and that we are not required to interpret it as forbidding such a result. The situation is the same whether the class of first remaindermen are the grandchildren of the testator or the children of another person who is given the life estate.

■ This testator has complied with the exact language of section 772 and has created a contingent remainder in fee (to his heirs) on a prior remainder in fee (to the issue of Johnston) to take effect in the event the estate of the prior remaindermen may be (is) determined before they

attain majority. We therefore hold that this trust comes within the provisions of the statute and is valid.

█ With respect to the cross-appeal we are unable to distinguish this case in principle from *Estate of Kline,* 138 Cal. App. 514 [32 Pac. (2d) 677]. The reasoning there used is applicable here and in our opinion is controlling. It follows that we find the cross-appeal to be without merit.

It necessarily follows, if we are correct in our view that the action taken by Clyde C. Potter in seeking an interpretation of the trust provisions of this will should not be interpreted as a violation of the disinheriting clause thereof, that the motion to dismiss the main appeal should be denied.

The motion to dismiss the main appeal is denied and the portions of the decree of distribution appealed from are affirmed. Each party to pay his own costs.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1937.