## ROSE v. ROSE.*

September, 1863.

Charitable donations of a public nature, if contingent and executory, form no exception to the law against perpetuities.

---

* An opinion in this case, which related to costs only, is reported in 28 N. Y., 184.

Rose *v.* Rose.

The conferring of the naked legal title upon executors, does not prevent a bequest from being void for suspending the real ownership of the fund, contrary to the statute.

Where a primary gift, not vested, is declared void for being made contingent on an event other than the determination of one or two lives, the limitation over, dependent on the same contingency, is void also, and cannot be sustained by regarding it as accelerated and vested immediately.*

The testator gave his executors the residue of his estate, with directions that if a specified sum were contributed within five years from his death to establish a Beneficent Association he desired should be formed, the executors should pay over the residue to such association; but if the association were not formed, or the specified sum not contributed within that time, they were to pay the residue to other beneficiaries.

*Held,* 1. That the real ownership of the residue would thereby be suspended for a period which might be more than two lives, and therefore the primary bequest was void.

2. That the secondary bequest, since it was subsequent and depended on the same event, was also void.

Chauncey Rose, executor of John Rose, deceased, commenced this action in the supreme court, against Henry Rose and others, seeking to have the nature and extent of the rights of the parties mentioned in the will of John Rose judicially ascertained and established, and especially that certain charitable donations contained in clause 9 of said will be decided to be valid or invalid. The complaint also sought the directions of the court for the management of the estate, and as to the execution of the trusts in the will, and also for general relief.

The following is the ninth clause of the will, which was the only part drawn in question.

" 9th. I give and bequeath to my aforementioned executors, all the residue of my estate, real and personal, to hold the same in trust, for the special end of encouraging and aiding to found in the city of New York an extensive beneficent association, that will provide and establish two or more farms as receptives for maintaining, educating, and employing, or apprenticing out such poor white children as may be properly controlled and placed therein; and particularly those youth who

---

* But an ulterior limitation which is bad may be dropped, allowing the primary bequest to stand. Harrison *v.* Harrrison, 36 *N. Y.* 543. Compare Schettler *v.* Smith, 41 *Id.* 327. See Burrill *v.* Boardman, 43 *Id.* 254.

Rose *v.* Rose.

may be compelled by cruel and dissolute parents or guardians to pilfer or beg in or about the city, believing that such an association and establishment would be means to rescue and save very many from ruin, from filling prisons and alms-houses. I do, therefore, desire and request, that whenever within five years after my decease, the sum of three hundred thousand dollars is raised from other sources for the aforesaid ends, that then said trustees do promptly transfer or pay over to such association all the said trust estate or proceeds thereof; but, in case the sum of three hundred thousand dollars be not raised, as aforesaid, within five years after my decease, then and in that event I desire and request my said trustees to give to the American Colonization Society, one half the amount or proceeds of said trust estate, and the remaining half they will please allot and give to whom or whatsoever they may deem to be the best and most worthy objects of charity."

The American Colonization Society answered to the effect that they were duly incorporated, and so entitled to take testamentary gifts—and claimed that clause 9 was valid, and that they were entitled to half of testator's residue, and to hold the same in case the bequests of the whole residue should be adjudged to be void, or in case the preliminary subscription should not be raised.

The Rose Beneficent Association of the city of New York also answered to the effect that the association was incorporated by statute, and was entitled to have the provisions in clause 9 carried into effect, and that the residuary estate therein appropriated should be paid to them, they being ready to perform all the conditions imposed on them by the testator.

*The supreme court,* at special term, WM. F. ALLEN, J., held that the entire disposition contained in clause 9 was invalid and void, and that neither the Rose Beneficent Association nor the American Colonization Society had any right to testator's residue under the will; but that the heirs took it as in case of intestacy, and the executor was directed to distribute the same accordingly. From the judgment entered thereon, both the societies appealed; and the judgment having been affirmed at general term, they appealed to this court.

*Alexander W. Bradford, George F. Comstock,* and *William Curtis Noyes,* for the defendant Rose.

*Theodore W. Dwight, William M. Evarts,* and *John A. Bryan,* for the Rose Beneficent Association.

*Charles O'Conor* and *Joseph B. Varnum,* for the American Colonization Society.

BY THE COURT.—WRIGHT, J.—The magnitude of the bequest, in connection with the interesting questions supposed to be involved and which were argued with so much learning and ability, has given unusual importance to this case. It may be, also, that the purpose of the testator in the disposition of the bulk of his large estate has tended to heighten the public interest, for, independent of any peculiar law of charity, and according to the general sense of civilized society, such purpose is eminently benevolent.

The testator contemplated the foundation of an extensive charity of the description indicated in his will. But he did not propose to be sole donor and founder. On the contrary, he did not propose to contribute at all unless others engaged in the undertaking; and hence, his munificent gift was limited upon the contingency that an association should be brought into existence, and the sum of three hundred thousand dollars raised from other sources, within five years of his decease. The plain meaning of the testator in the clause disposing of the residue of his estate, is this: his executors were to hold such residue to aid thereby in founding the Beneficent Association indicated. If within five years from his decease the association should be formed, and there was raised from other sources the sum of three hundred thousand dollars, the whole of his residuary estate should belong to such association, and his executors were to pay it over. No duty or trust was enjoined upon the executors except to pay over on that contingency, and in the mean time they were to hold the funds passively. But if no association was formed, or, if formed, there should be a failure to raise the sum named from other sources, within the time specified, the residuary estate was not to be devoted to the benevolent purpose primarily contem-

plated by the testator; but one-half thereof was to go to the American Colonization Society, and the other half " to whom or whatsoever they (the executors) might deem to be the best and most worthy objects of charity."

As the testator, therefore, framed the bequest, it is contingent and executory in respect to both the primary and secondary dispositions. As to the primary disposition there is an uncertainty as to the association (which was non-existent at the testator's death), even being formed, and also as to the raising of the three hundred thousand dollars. The secondary dispositions hinge on the same uncertain event, viz: the not raising the three hundred thousand dollars. They do not take effect, nor did the testator intend they should, unless there is a failure to raise the sum within the time specified.

We are met at the threshold of our examination with the objection that the limitations, tested by our law of perpetuity, are invalid. Unless, therefore, the objection of remoteness can be avoided, it will be unnecessary to examine the question so fully discussed and still unsettled, whether the English law of charitable uses, as it existed at the adoption of the Constitution of 1777, is now the law of the State. If the dispositions are void on the ground of remoteness, the property goes to those to whom the law gives the ownership in case of an ineffectual devise or bequest, viz: the heirs and next of kin.

In determining the question whether the vice of perpetuity attaches, it is of no significance that the limitations are to what are understood as charitable objects. Charitable donations of a public nature, form no exception to the law against perpetuities; at least while they remain contingent and executory. Estates, although given to charitable uses, must vest within the time prescribed by law. This is the American and English doctrine, and I am not aware of any case to the contrary. Phelps *v*. Pond, 23 *N. Y.* 69; Leonard *v*. Burr, 18 *Id.* 96; Yates *v*. Yates, 9 *Barb.* 324; Morgan *v*. Masterton, 4 *Sandf.* 442. In 1 *Drury & W.* 245, Sir EDWARD SUGDEN, sitting in the Irish court of chancery, said: "Limitations over to charity do not differ from any other, and to be effectual must be confined within the usual period," and on that ground the limitation over to the charity was adjudged to be void.

Indeed, the counsel of one of the donees in the present case, the American Colonization Society, concedes that if the bequest to the society did not vest immediately on the death of the testator, but was postponed for any period, however short, it would be void, because human life does not, as our rule against perpetuities requires, enter into the limitation.

It cannot be successfully urged that the primary legatee took a vested interest; certainly the formation of the association and the raising of the three hundred thousand dollars were conditions precedent. The executors were not to pay over the fund until the conditions were performed, which might be any time within five years from the death of the testator, and in default of performance it was to go to other beneficiaries. They were not authorized to expend any part of the estate in organizing the association, or in procuring contributions from other sources. The limitation directs them in terms to pay over " the trust estate, or proceeds thereof." It does not appear that any part of the legacy has been used for the purpose suggested; and I am clearly of the opinion that the executors were without authority to do so. They were to hold the fund, subject to the contingencies on which it was given, for the period of five years, unless the uncertain events, upon the happening of which it was to vest in and belong to the primary legatee, sooner occurred. As the testator framed the limitation and by its precise terms, the " absolute ownership " of the fund was to remain suspended, it might be for five years, or a shorter period, having no dependence upon lives. Of course the naked legal title was in the executors, by operation of law, or under the will, for the benefit of the next of kin unless effectually bequeathed to others; but the real ownership was suspended and the fund incapable of alienation for five years, unless the conditions on which the limitation was to take effect were sooner fulfilled. The fund now awaits the performance of one of the conditions, viz: the raising of the three hundred thousand dollars, and until that condition is performed it cannot be paid. This is no vested gift, but on the contrary a perpetuity, because the vesting of the gift is not made to depend on a life or two lives in being, but on an uncertain event which may not happen within five years, a period

IV.—8

which cannot be substituted for lives. 1 *R. S.* 773, § 1; Hawley *v.* James, 16 *Wend.* 61; Yates *v.* Yates, 9 *Barb.* 325; Boynton *v.* Hoyt, 1 *Den.* 53; Phelps *v.* Pond, 23 *N. Y.* 69; Morgan *v.* Masterton, 4 *Sandf.* 442; Ker *v.* Lord Dungannon, 1 *Drury & W.* 509: *Lew. on Perpet.* 147, 170, 172; 1 *Jarm. on Wills,* 230, 321. The vice of perpetuity is, therefore, inherent in the primary limitation.

But how is it with the second bequest over to the Colonization Society, and other objects which the executors shall deem meritorious charities? The primary and ulterior limitations are, in terms, hung upon the same uncertain event, and it would seem to follow, that if the one involves a perpetuity, the o her is affected with the same vice, and for like reasons. Taking the will precisely as the testator has written it, the secondary bequest is made to vest upon the failure to raise the three hundred thousand dollars in five years. Whether it shall ever take effect is, in terms, dependent upon the determination of this uncertainty. The primary limitation is dependent upon the event being determined one way, the secondary limitation on its determination the other way. I give, says the testator, to the first object of my regard, the Benevolent Association, all of my residuary estate, upon condition that within five years after my decease, the sum of three hundred thousand dollars is raised from other sources; but, "in case the sum of three hundred thousand dollars be not raised, as aforesaid, within five years after my decease, *then and in that event* I desire and request my said trustees to give the American Colonization Society, one half the amount, or proceeds of said trust estate, and the remaining half they will please allot and give to whom or whatsoever they may deem to be the best and most worthy objects of charity." Can there be any doubt, therefore, that the secondary gift, according to its terms, is limited upon the determination of the same event which the primary gift is made dependent, and that, taking the will as it reads, the vice of perpetuity equally affects both of the bequests? I think not. The ulterior bequest is objectionable, not merely because it is subsequent in order to one that is too remote, but because it is subsequent and depending upon the same event. The subsequent limitation, judged by itself, is too remote. I

concede, that if the ulterior gift was, in itself, well limited, it would not be affected by the circumstance that the prior gift was void for remoteness, or any other vice; but I think it would be difficult to find a case where the ulterior bequest was void for remoteness according to its terms, and the gift was accelerated so as to bring it within the rules of law. This would be, in effect, to alter the bequest and make a new will for the testator.

The learned counsel for the Colonization Society contended, with much ingenuity, that the limitation over to the society was not of a character to be impeached for remoteness; that the right of the society to the money was fixed and inevitable from the moment of the testator's death, and that there was no length of time whatever in which the vesting of the gift to it was either uncertain or postponed. The result is reached in this way: The event, it is said, on which the bequest to the Colonization Society was limited to take effect, was a mere negative. That with the view of settling, if possible, the prior gift, the testator allowed five years for ascertaining its practicability, yet the gift over, both in expression and in intent, is limited upon the event. If such a negative can be called an event, it is to be considered as happening whenever the affirmative is legally impossible. Taking into view the state of facts and the existing law, it was, at the death of the testator, legally impossible, and, therefore, in fact impossible, that the three hundred thousand dollars could ever be raised, as prescribed by the testator; for the Benevolent Association did not exist, nor could it ever come into existence to raise it. Looking, says the counsel, at the limitation from the stand-point of the testator's death, the event on which the prior limitation was suspended could never happen; the Association did not exist, and the law would not allow it to come into existence, so that it might raise the three hundred thousand dollars, and hence, the negative of the event on which the secondary bequest was limited, is to be regarded as happening whenever the legal impossibility existed of raising the three hundred thousand dollars, which was at the moment of testator's death. An executory limitation, it is argued, to be avoided by the rule against perpetuities, must be so framed at the time of its creation as

*ex necessitate* not to take effect (if it takes effect at all), within the allowed period.   If the limitation cannot by any possibility ever vest, the rule does not apply, and the test of its validity, under the rule, is always capable of being applied to it at the instant the instrument containing it becomes operative.   In testing the validity of any disposition sought to be impeached on the ground of remoteness, we are told that the sole inquiry, is—is the limitation so framed that we can see that that it must take effect, if ever, within the prescribed period?   If the event on which it is hung, be possible in the nature of things, and it be not of such a character that it must inevitably happen, if ever, within the prescribed period, it is conceded that it is void in its creation; but an attempted future limitation upon a stated event, it is claimed, is not avoided by the rule against perpetuities, but is inherently null and void, owing to the mere fact that it is incapable of ever taking effect.   If, however, it can be seen at the moment of the testator's death, taking into view the state of facts and the existing law, that the gift must take effect, if ever, within the prescribed time, it is not invalid on the ground of remoteness.   It is insisted that the limitation over to the Colonization Society was on the negative of an event that could not possibly ever happen within the prescribed time, for it was legally impossible that it could happen at all.   Hence, the gift, being limited on the not happening of an event that it was legally impossible could happen, the right of the Colonization Society to the money was subject to no contingency, but was fixed from the moment of the testator's death.

The sum of this argument is, that the prior gift being void for remoteness, or some other vice, and out of the way, and the law rendering it impossible that that event could happen, on the negative of which the secondary gift was limited to take effect, such bequest is to be brought forward and upheld as an immediate vested gift.   The argument is, I think, unsound on principle and authority.   If it be correct in this case, I cannot perceive why, in any case, where there are primary and secondary limitations depending on the same event, and the law adjudges the primary limitation to be void, the secondary bequest shall not be accelerated, and made to vest immediately.

But I think it would be a new doctrine that when the secondary limitation, according to its own terms, is more remote than the law will permit, it is brought forward if the vice of perpetuity, or some other vice, shall be fatal to and legally displace the prior limitation. In this case the prior gift was limited, upon the condition of raising, within five years, the sum of three hundred thousand dollars, and it was to take effect upon the happening of that contingency. This was void for remoteness. The posterior gift was to take effect, in case of a failure to raise such sum within five years from the testator's decease, and only on that event being determined. The intention plainly indicated by the words of the limitation is, that the latter gift is to remain suspended until the sum specified is raised, provided it be done within five years. 'This is a clearly expressed limitation of the gift upon a contingency. The bequest is, itself, a perpetuity without regard to the presence or absence, or the validity or invalidity, for any cause, of the prior limitation. As the testator has framed the limitations, primary and secondary, they are both condemned by our law of perpetuity. The bequest to the Colonization Society cannot be brought forward and upheld as an immediate vested gift, without, in effect, making a will for the testator, instead of expounding the one made by him. On the ground of remoteness, therefore, which affects both bequests, I am of the opinion that there has been no valid or testamentary disposition of any part of the residuary estate.

The court concurring in this view it disposes of the case without reaching the question, so elaborately and learnedly discussed, viz: whether the peculiar system of English jurisprudence, by which indefinite charitable gifts are upheld, is the law of this State.

The judgment of the supreme court should be affirmed.

All the judges concurred in respect to the primary bequest, and all but H. R. SELDEN, J., who was in doubt, as to the secondary bequest.

Judgment affirmed, and, taxable costs of all parties to be paid out of the funds of the estate.