In the Matter of the Will of NETTIE M. ROE, Deceased.

HENRIETTA H. GORDON et al., Appellants; JOHN J. BENNETT, JR., as Attorney-General of the State of New York, et al., Respondents.

Argued October 10, 1939; decided November 28, 1939.

*Harold R. Medina, John D. Hallock* and *John W. Jordan* for appellants.

*John J. Bennett, Jr., Attorney-General (Robert P. Beyer* of counsel), respondent.

*Joseph T. Losee* for Patchogue Citizens Bank and Trust Company, as trustee, respondent.

Rippey, J. Nettie M. Roe died in the village of Patchogue, Suffolk county, on March 24, 1928, leaving a last will and testament which was admitted to probate by the Surrogate of Suffolk county on July 2, 1928, and Sidney N. Gerard and A. Smith Petty were thereupon appointed and qualified and entered upon the discharge of their duties as executors of her estate. On December 15, 1930, an accounting by the executors was had, their accounts settled and they were discharged upon payment of the residuary estate to the Patchogue Citizens Bank and Trust Company, which was named as trustee under the provisions of paragraph twenty-third of the will.

To and including the time of the settlement of the account of the executors no question has been raised by any one interested in the estate or cited on the probate of the will or the proceedings for judicial settlement as to the validity or invalidity of paragraphs nineteenth and twentieth of the will relating to the use to which the residuary estate was to be put. The proceeding at bar is brought upon petition of two distributees of the deceased for a construction of those paragraphs alleging that the trust sought to be created by paragraph twentieth of the will was void for remoteness in vesting and in violation of the rule against perpetuities. Decision has gone against the petitioners in the lower courts and the case comes to us by permission of the Appellate Division. Paragraphs nineteenth and twentieth of the will read as follows:

" *Nineteenth.* All the rest, residue and remainder of my property and estate, as well real as personal and wheresoever situated, which at the time of my death shall belong to me or be subject to my disposal by will, I give, devise

and bequeath to my Trustee hereinafter named, in trust, nevertheless, to invest the same and to keep the same invested and to receive the rents, issues, income and profits therefrom, and after defraying all taxes and other lawful charges upon the same, in event my Trustee can find my nephew, John James Roe, to use so much of the income of said trust fund as in the discretion of my Trustee shall be deemed proper, for the maintenance and support of my said nephew, John James Roe, and his children, if he have children, and I direct that the balance, if any of said income from said trust fund, shall become a part of the principal thereof at the end of each calendar year after said fund shall come into the hands of my said Trustee. In event my nephew, John James Roe, shall have died previous to my death and have left him surviving a child or children, I direct my trustee to use so much of the income of said trust fund as in the discretion of said Trustee shall be necessary and proper for the maintenance and support of said children, until all of said children shall have arrived at the age of twenty-one years. Upon the death of my nephew, John James Roe, and all of his said children, if he be survived by children, arriving at the age of twenty-one years, I direct my Trustee to divide the said estate among the children of my said nephew, John James Roe, giving to each child an equal share of said trust fund, and during the minority of such children, I nominate, constitute and appoint the Citizens Trust Company of Patchogue, as General Guardian for such child or children, until he or she shall arrive at the age of twenty-one years.

" *Twentieth.* I hereby direct that my Executors hereinafter named shall have a period of two years in which to settle my said estate and that during said two years they shall make diligent and every necessary effort to find my said nephew, John James Roe, or his family, if he shall be dead and should have been survived by children, and in event in said period of two years my Executors are unable to locate my said nephew or any children, then and in that event, the provisions of paragraph Nineteenth of this my

Last Will and Testament, relating to payments to him or to his children, shall not be binding upon my said Trustee and that my said Trustee shall dispose of the trust fund given to said Trustee by paragraph Nineteenth of said Last Will and Testament as follows: I direct that all of said trust fund shall be used for the purchase of a site and the erection of a building and the equipment thereof, as a hospital, for the use and benefit of the people of the Village of Patchogue, to be known as the John VanBrunt Roe Hospital, in honor of my father, John V. Roe. I hereby authorize and empower my Trustee to use such portion of said trust fund as in its discretion seems wise for the purpose aforesaid, retaining in its hands such portion of the fund as may be necessary to insure the care and repair of said hospital. In event that the Trustee shall deem it advisable to co-operate with others in the erection of a hospital and other funds shall be contributed for the erection of the same, I direct that my said Trustee shall personally direct the expenditure of all moneys used for such purpose from said trust fund, and shall at all times retain title to any property purchased by said Trustee for such purpose."

The decree upon the judicial settlement of the accounts of the executors, among other things, provided that there was no vesting of the residuary estate in John James Roe or his family since he was not found after the exercise of due diligence within two years from the date of death of the deceased and that the trust fund passed to the trustee for the uses and purposes stated in paragraph twentieth of the will.

In his decision, however, the Surrogate states that the petitioners were not in a position to raise the issue as to what construction should be placed upon these clauses. One of the petitioners was cited upon the final accounting by the executors. Neither upon the proceeding for the probate of the will nor upon the proceedings for judicial settlement was any question directly or specifically raised as to the proper construction to be placed upon the two clauses in question. One of the petitioners, however, was neither a

party to, nor cited upon either proceeding nor did he appear voluntarily. If it were to be held that the decree of judicial settlement was binding on the question of construction upon those who were parties to the proceeding, the adjudication is not binding or conclusive upon the party who was not cited and failed to appear (*Matter of Killan*, 172 N. Y. 547).

The sole question for consideration in this court is whether the trust for the hospital vested at the date of the testatrix's death subject to be divested upon the contingency that her nephew or any of the nephew's children be located within two years, or whether the vesting was held in abeyance for the two-year period. If the latter proposition is true, the gift to charity violates the rule against perpetuities (Gray's " Rule Against Perpetuities " [3rd ed.], § 605; Cf. American Law Institute, Restatement of the Law of Trusts, § 401, subd. [2], Comment j). The applicable law relating to actual and possible remoteness is correctly stated, we think, upon authority, in 21 R. C. L. (at p. 289), in so far as applicable here, as follows: " In enforcing the rule against perpetuities it is a firmly established principle that every future limitation of an estate is void as too remote unless it is apparent that it must take effect and vest, if at all, within the period allowed by the rule. The test therefore by which to ascertain whether a limitation over is void for remoteness is very simple. It does not depend on the character or nature of the contingency or event on which it is to take effect, for these may be varied to any extent. But it turns on the single question, whether the prescribed contingency or event may not arise until after the time allowed by law within which the gift over must take effect. * * * It is not sufficient that the future estate may by possibility become vested within the period allowed by the rule against perpetuities or even that it will probably become vested in such period. If it may possibly happen beyond the established time limits or if there is left any room for uncertainty or doubt on the point the limitation is void.

If a future limitation may not by possibility take effect within the prescribed period it cannot be made good by subsequent events. In other words, the validity of the future estates under the rule against perpetuities depends not on what actually happens after the time at which the rights of the parties are fixed, but on what may happen as viewed at the time when the deed or will creating them takes effect."

The question of the time of vesting is one of intent to be gathered from the instrument itself. The Surrogate must necessarily have held, upon the merits, that the gift vested at the moment of the testatrix's death in the trustee for the benefit of the charity subject to being divested upon discovery of testatrix's nephew within two years. From the language of the will it clearly appears that the testatrix's paramount and primary purpose was to provide for the needs of her nephew or his family. It was only in the event that neither he nor members of his family could be found within a period of two years from the date of testatrix's death that the charity became entitled, by the terms of the will, to the benefit of the residuary estate. The theory that the estate vested in the charity at the time of decedent's death, subject to being divested upon discovery of the nephew or his family, is clearly contrary to the expressed intention of the testatrix. What she intended to provide and did provide was that the vesting of the estate should be held in abeyance for a period of two years during which a search should be instituted for the discovery of the nephew or, in the event of his death, of his children if he left any; that if, during that period of two years such discovery should be made, the nephew or his family, as the case might be, should get the estate. But the gift to the hospital was intended to be made not only at the expiration of the two-year period and then only, but additionally only in the event that during those two years the existence of the nephew or his family as the case might be could not be discovered. That the testatrix's primary purpose was to provide for the needs of the nephew appears not only

from the order of the numbering of the paragraphs but from the language of the will, paragraph twentieth providing that if the executors are unable to locate the nephew, or his children, if any, if he be not living, within two years, " *then and in that event*" only were the provisions of paragraph nineteenth annulled. The fact that the nephew was never found cannot help the validity of the disposition (*Bishop* v. *Bishop*, 257 N. Y. 40).

The courts are vigilant in protecting gifts to charity where such protection reasonably can be given (Gray's "Rule Against Perpetuities," § 607), but "in determining the question whether the vice of perpetuity attaches, it is of no significance that the limitations are to what are understood as charitable objects. Charitable donations of a public nature, form no exception to the law against perpetuities; at least while they remain contingent and executory. Estates, although given to charitable uses, must vest within the time prescribed by law " (*Rose* v. *Rose*, 4 Abb. Ct. App. 108). Although the lower courts, in the "cause of humanity," have made a valiant effort against a flock of collaterals to so construe the will as to avoid remoteness of vesting, we think, as matter of law, that such construction cannot obtain and that the attempted disposition of the residuary estate by the testatrix was void. Each attempted donation was contingent and executory. There was no vested gift to any one as of the date of the death of the deceased. Since the gift was not made to depend upon a life or upon two lives in being but solely upon the uncertain event of the discovery of the nephew or of his family as the case might be, which might not happen within a period of two years, a perpetuity only was created. Remoteness of vesting affected both clauses of the will. Since the attempted gift under clause nineteenth was void as vesting was contingent upon an event other than the termination of one or two lives in being, the limitation over to the hospital, dependent upon the same contingency, cannot be sustained by regarding it as accelerated or vested as of the date of death of the deceased (*Rose* v. *Rose, supra*). As to the residuary estate, the deceased died intestate.

The orders should be reversed and the matter remitted to the Surrogate's Court with instructions to proceed in accordance with this opinion, with costs to all parties appearing, payable out of the estate.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur; O'BRIEN, J., taking no part.

Ordered accordingly.