**HADLEY et al. v. RINKE (HADLEY et al., third-party defendants).**

District Court, S. D. New York.

Jan. 17, 1941.

Rehearing Denied Feb. 8, 1941.

208

Hunt, Hill & Betts, of New York City (Robert McLeod Jackson, of New York City, of counsel), for plaintiffs.

Osborn, Fleming & Whittlesey, of New York City, for defendant Rinke.

Glass & Lynch, of New York City (Walter A. Lynch and Jerome Weinstein, both of New York City, of counsel), for third-party defendants Fuchs and Thames River Line, Inc.

LEIBELL, District Judge.

This is a motion to dismiss the complaint. Plaintiffs dispute the right of the third-party defendants, as moving parties to ask for a dismissal of the complaint against the original defendant, Rinke, but since Rinke, in a memorandum, joins in the motion, it is unnecessary to decide that point.

The ground upon which dismissal of the action is sought is that the two causes of action alleged in the complaint are founded upon trust agreements which are void because violative of the New York law against the unlawful suspension of the absolute ownership of personal property. N.Y. Personal Property Law § 11, Consol. Laws, c. 41. Plaintiffs contend that defendant Rinke, the trustee named in each trust agreement and the attorney who prepared them, is estopped from denying the validity of the trust. With such contention I cannot agree because the so-called rule against perpetuities forms part of the public policy of the state and may not be violated even by the consent of all parties concerned. Carrier v. Carrier, 226 N.Y. 114, 122, 123 N.E. 135.

Each cause of action alleged in the complaint is based upon a separate trust agreement; plaintiff, Francis E. Hadley, Jr., is the settlor of one trust, and plaintiff, Wilfred B. Hadley, is the settlor of the other. However, so far as is material upon this motion, the provisions of each trust are identical.

In each of the trusts, the trustee was directed to hold the corpus, consist-

ing of certain shares of stock and debenture notes of Thames River Line, Inc., "* * * until January 1, 1932, or until the death of Agatha H. Hadley, mother of the grantor, in the event that she live longer than December 31, 1931." The trusts were established in New York on or about July 30, 1926. It is the settled law of New York that if the absolute ownership of personal property be suspended for a definite period of time, however short, the instrument so providing is void. The legal period for which the absolute ownership of the corpus of the trusts here involved could have been suspended was two lives in being on the date of the establishment of the trust in 1926. See Personal Property Law, § 11, prior to amendment effective Sept. 1, 1930. Matter of Hitchcock's Will, 222 N.Y. 57, 71, 118 N.E. 220; Monypeny v. Monypeny, 202 N.Y. 90, 93, 95 N.E. 1; Matter of Kramer's Estate 153 Misc. 606, 275 N.Y.S. 550. There is no question of any contingent gift in remainder made on a prior gift in remainder, an exception mentioned in said Section 11.

■ If, therefore, upon any contingency, the trusts in question would not terminate within the prescribed period of two lives in being but would continue for an absolute period not ending before January 1, 1932, the trusts would offend the statute and would be void. In this connection it is to be noted that the validity of the trusts must be determined on the basis of what might have happened rather than on the basis of what actually did transpire. So that the fact that the mother, Agatha H. Hadley, is still alive would not rescue the trust, if otherwise invalid. Matter of Wilcox, 194 N.Y. 288, 295, 87 N.E. 497; Matter of Perkins' Estate, 245 N.Y. 478, 482, 157 N.E. 750; Matter of Roe's Will, 281 N.Y. 541, 547, 24 N.E.2d 322, 131 A.L.R. 707.

To determine the question here presented a careful analysis of the trust provisions is necessary. The term of the trust was as above stated "* * * until January 1, 1932, or until the death of Agatha H. Hadley, mother of the grantor, in the event that she live longer than December 31st 1931." The disposition of the trust income was to be as follows: (1) the first $37,500 (comprising income and/or the proceeds of redeemed debenture notes constituting part of the corpus) was directed to be paid to the settlor (in the Wilfred B. Hadley trust the first $33,750 was to be similarly paid); (2) thereafter all income was to be paid to the settlor until his mother, Agatha H. Hadley, became an American citizen; (3) thereafter all income was to be equally divided between the settlor and his mother until the mother's death.

The trust purposes thus far stated were all capable of accomplishment during the life of the mother, Agatha H. Hadley. But it was contemplated that upon certain contingencies the trust might continue beyond the death of Agatha H. Hadley, in accordance with the following provision: "* * * provided, however, that if the said Agatha H. Hadley, mother of the Grantor, should die before becoming an American citizen, or having become an American citizen should die before the sum total income received, in addition to funds received from redemption of debentures, under this trust shall exceed $37,500.00, as hereinabove provided, or said Agatha H. Hadley having become an American citizen and the total income of the trust having exceeded $37,500.00 so that her right to share in said income has arisen and she then dies, then and in that event all of said income shall be paid to Francis E. Hadley, Jr., the Grantor herein."

Upon the termination of the trust the corpus was to be paid to the settlor, if living; otherwise to his testamentary appointees or his heirs at law.

■ It is not disputed that this trust accomplished a suspension of the absolute ownership of the personal property constituting its corpus. This is true because under Section 15 of the Personal Property Law the right of a beneficiary to enforce the performance of a trust to receive the income of personal property is not transferable, and also because there were contingent remainders limited to persons not ascertainable at the time of the creation of the trust. Underwood v. Curtis, 127 N.Y. 523, 537, 28 N.E. 585. It is unnecessary therefore to consider the effect of certain express restrictions on alienation as set forth in the trust agreement.

It remains to decide whether under the terms of the trust the absolute ownership was suspended for an excessive period. When certain motions to strike parts of the defendant Rinke's answer were before me last year, I indicated in an opinion dated May 28th, that underlying the numerous issues in this litigation there might

be an issue as to the validity of the two trusts. I suggested that this question could be raised in an amended answer, and brought on for determination by a motion directed to the complaint or at the trial of this action. The present motion to dismiss the complaint presents that question.

■ Despite the apparent invalidity of the trust because of the specification that the trust term shall be the life of Agatha H. Hadley or until January 1, 1932, whichever shall be longer, the trust may nevertheless be upheld if the other provisions of the trust show that in every possible contingency the trust by its terms must terminate within the prescribed two lives in being. Matter of Mount's Will, 185 N. Y. 162, 169, 77 N.E. 999; Cohen v. Wacht, 137 Misc. 679, 244 N.Y.S. 274, affirmed 231 App.Div. 801, 246 N.Y.S. 873. As was stated in Crooke v. County of Kings, 97 N. Y. 421, 437:

"But the inherent character of the trust, its own essential limitations, may very well form an element in the construction to be given to the language creating it. That character and those limitations are such that the trust cannot exceed in duration the lives of the beneficiaries, because upon their death its purpose is accomplished, and a trust supposes a beneficiary, and so its very creation implies necessarily, without express words, a termination at such period."

What then is the duration of these trusts under every possible alternative? Under one alternative the duration of the trust would be the lifetime of the mother if she died after December 31, 1931. If she died before that date would the trust continue until January 1, 1932? In answering that question we must consider the three contingencies set forth in the proviso quoted above. Under that proviso if the mother died (1) before becoming an American citizen or (2) after becoming an American citizen but before the sum of $37,500 was paid the settlor or (3) after becoming a citizen and gaining the right to income by reason of the prior accrual and payment of the $37,500, it was intended that the trust should continue because income was in that event directed to be paid the settlor. It will be noted that from the nature of these contingencies one of them was sure to happen. Supposing one of them did occur, how long was it intended that the trust should endure and for whose benefit? The answer must be until January 1, 1932, if that specified date is to be given any application and of course we should fit that date into the trust scheme if we possibly can; and for the benefit of the settlor under the terms of the trust. I therefore construe the trust as providing for a continuance of the trust for the benefit of the settlor until January 1, 1932, if he survived his mother and if his mother died before that date, and one of the above enumerated contingencies happened.

■ But supposing the settlor also should die before January 1, 1932, would the trust endure beyond his death and until January 1, 1932? For what purpose? The income would be payable to the settlor only if he were alive and after his death there would be no designated beneficiary entitled to receive the income of the trust. There would be no trust purpose capable of accomplishment after the death of both the settlor and his mother, and so the trust would end. A trust will not be unreasonably construed so as to make it exceed in duration the lives of the beneficiaries, if on their death its purposes are accomplished. Crooke v. County of Kings, supra; Locke v. Farmers' L. & T. Co., 140 N.Y. 135, 147, 35 N.E. 578. And so if both the beneficiaries should die before the stipulated date of January 1, 1932, the trust would on their death terminate because of the potent implication flowing from the complete accomplishment of the trust's purpose. Therefore, in the event of a conflict between the stipulated term (to January 1, 1932) and the natural term (the lives of the two beneficiaries) I must give operation to the requirements of the natural term and so disregard the requirement of the stipulated term. I repeat that this conflict would occur only in the event of the death of both the mother and the settlor prior to January 1, 1932. In such contingency no doubt the settlor's probable expectancy that the trust would not terminate before January 1, 1932, would be defeated. But the settlor must be deemed to have taken the risk of the unforeseen, a risk in which probabilities were on his side and in which the event has favored him. In this connection it may be noted that the remainders vested by the language of the agreement "upon the termination of the trust", not upon January 1, 1932, or the later death of Agatha H. Hadley.

To summarize there were four possible alternatives for the duration of the trust: (1) only for the life of Agatha H. Hadley,

if she lived after December 31, 1931; (2) only for the life of Agatha, no matter what date she died, if the settlor had predeceased her; (3) for the life of Agatha, if she died before January 1, 1932, and thereafter for the life of the settlor but only until January 1, 1932, if the settlor lived until that date; (4) for the life of Agatha and thereafter for the life of settlor if he should survive her but die before January 1, 1932. Under any of these alternatives the duration of the trust would not exceed two lives in being at the time of its creation; and all contingent remainders would become vested within that period.

Defendant argues that if both Agatha and the settlor had died within a few days after the establishment of the trust, the corpus would have vested in the remainderman, an event which would have defeated the settlor's intention that the first $37,500 ($33,750 in the Wilfred B. Hadley trust) realized from the trust, as above indicated, should be paid to him and by him used to discharge his debt arising from the purchase of the securities forming the corpus of the trust. But this must likewise be considered a contingency, of which the settlor was willing to take the risk. The contention that the trust was intended to last until the $37,500 was paid regardless of the duration of beneficiaries' lives cannot be accepted because it was not made a condition of the life of the trust and would be at variance with either the two lives in being period or the January 1, 1932, termination date, if less than the two lives in being, each of which bears no relation to the question of whether or not $37,500 had accrued from the trust before its expiration. Further, such a contention cannot be reconciled with one of the contingencies set forth in the above quoted proviso which provided that if Agatha died after becoming an American citizen and after the $37,500 was paid, the income would nevertheless be paid to the settlor. In my opinion payment of the sum does not in any way control the duration of the trust. The settlor's expectation probably was that the trust would endure at least until January 1, 1932, an expectation which could have been legally realized except in the one remote contingency heretofore alluded to. In that remote instance the set date would have to be disregarded and the trust would terminate with the lives of the two beneficiaries prior to that date.

In such a situation the trust should be upheld. In Matter of Hicks' Estate 221 App.Div. 378, 223 N.Y.S. 295, a trust was created for the benefit of two children of the testator "for a period of ten years from my decease". Other provisions in the will made it clear however that the trust would terminate and the contingent remainders vest not later than the death of the survivor of the two beneficiaries named, even should that be prior to the conclusion of the stipulated ten-year period. For that reason the trust was upheld. In Cohen v. Wacht, supra [137 Misc. 679, 244 N.Y.S. 275], the trust agreement provided: "This trust is to continue for a period of ten years from date hereof * * *." The beneficiary of the trust was one Sadie Cohen, and in the event of her death prior to the expiration of the stipulated ten-year period the trust agreement created certain contingent remainders depending upon whether she died with or without issue. If she left issue, the trust was to continue until said issue attained their majority; if no issue, then the remainder went to her brother and sisters. The court excised the secondary trust estate for the benefit of her issue, because based on lives not in being at the date of the creation of the trust. In the event Sadie Cohen died within ten years and without issue or brothers or sisters, no disposition was made of the corpus under the provisions of the trust. It was argued that in that contingency there would be an illegal suspension of ownership because the trust would continue for an absolute period of time, not based on lives in being. The court rejected this contention pointing out that the ten-year period acted only as a limitation on the trust term within the life of Sadie Cohen, and stated (137 Misc. at page 683, 244 N.Y.S. at page 279): "It is a reasonable assumption that, when its purpose was accomplished and when he [the settlor] named no person as the beneficiary of the trust, he intended it to cease."

I have therefore reached the conclusion that the trust agreements here involved, when carefully analyzed and reasonably construed, are not violative of the New York law against the unlawful suspension of the absolute ownership of personal property. The motion to dismiss the complaint is therefore denied.

After defendants' above motion to dismiss the complaint had been made, plaintiffs moved for leave to amend the complaint so as to plead additional causes of action for a reformation of the trust agree-

ments, so as to provide that the period of the trust was the life of Agatha H. Hadley. My decision denying defendants' motion to dismiss the complaint really renders academic any dispute about the right to reform the trust instrument.

However, the affidavits submitted on plaintiffs' motion leave me unconvinced that any mistake was made in the trust instrument as executed. The occasion of the establishment of the trusts is outlined in the affidavits. The father owned a large amount of stock in Raymond Hadley Corporation, which controlled Thames River Line, Inc. The steamship company was about to purchase a vessel which was to engage in the coast-wide trade. The father was advised that under the United States Shipping laws, 46 U.S.C.A. § 802, he, as a British subject, could not retain more than a 25% interest in any steamship corporation engaged in operating a vessel in the coast-wide trade, or exercise voting control of any corporation so engaged. The father therefore had to divest himself of a large proportion of his stock ownership. This he did by selling the stock to his sons, with a very limited number of shares going to other individuals who were employees of the corporation.

The sons apparently had little to do with the preparation of the trust agreements. The defendant Rinke, who was the father's attorney, prepared the agreements upon instructions given to him by the father. The sons read the agreements and evidently approved and signed them. Their affidavits amount to a claim that the purpose of the establishment of the trusts was to provide an income for their mother, Agatha H. Hadley. This claim cannot be reconciled with the provisions of the trust which under several contingencies would not yield any income at all to the mother. The sons' affidavits give no explanation of how the specific date, January 1, 1932, as a termination date of the trusts, was inserted. For all the moving affidavits say, that date was inserted by pure unexplained chance.

■■■ The defendant Rinke's affidavit however gives a plausible explanation, namely, that the father himself intended to become an American citizen, which it was thought would take five years, and the trusts being established on July 30, 1926, the January 1, 1932, termination date would give him time enough to become a citizen. What would happen upon that

event is, of course, a matter of speculation; but Rinke says in his affidavit that the specific date was inserted in the trust not by any chance or mistake, but by the express direction of the father, who evidently acted for the sons in giving directions to Rinke as to the provisions of the trust agreements. In my opinion, there is no real showing of any mistake which would move the Court towards allowing an amendment of the complaint. Further, the fact that approximately fourteen years have elapsed since the creation of the trust is an indication of laches which also would influence the Court's discretion against allowing the proposed amendment of the complaint. The father would be the most valuable witness on the question of whether there was any mistake. His illness and recent death removed from the scene this valuable witness whom the defendant might have called on the issue of mistake. This is a factor which the Court cannot overlook. The motion to amend the complaint by adding thereto two causes of action for a reformation of the trust agreements, is denied.

Submit proposed orders accordingly and on two days' notice.

### On Motion for Reargument.

The notice of motion served by the third-party defendants October 8, 1940 reads as follows: "Please take notice that upon the complaint and the amended answer and amended third-party complaint filed herein the undersigned will move this Court, at Room 506, United States Court and Post Office Building, Borough of Manhattan, City of New York, on the 15th day of October, 1940 at 10:30 A. M. or as soon thereafter as counsel can be heard, to dismiss this action because the complaint fails to state a claim upon which relief can be granted in that the trust agreements referred to in the complaint are violative of the rules against perpetuities and unlawful suspension of alienation."

In that motion defendant Rinke joined.

■■■ After reading the briefs of the various parties in which they argued the question of the legality of the trust agreements referred to in and annexed to the complaint, I concluded that the issue presented was the validity of the provisions of those agreements and nothing more. It appeared to me that the third-party defendants could not be moving for judgment on the pleadings under Rule 12(c), 28

U.S.C.A. following section 723c, because the notice of motion did not specifically request it. Further, the special defenses of defendant Rinke's amended answer and the allegations of the third-party complaint and their relation to the trust agreements were not discussed in the briefs. The latter part of the notice of motion used the language of Rule 12(b) (6) and seemed to raise the issue as to the alleged insufficiency of the complaint in that it fails "to state a claim upon which relief can be granted". In deciding that question I did not have to consider any of the allegations of the amended answer or the third-party complaint. The argument was that plaintiffs had no claim because the trust agreements on which they based their claims were violative of the New York law against perpetuities and the unlawful suspension of alienation.

I held that the trust agreements were not void, that they did not violate the New York law against the unlawful suspension of the absolute ownership of personal property. N.Y. Personal Property Law, § 11, Consol. Laws, c. 41. In the proposed order submitted on that decision plaintiff's attorneys have included a recital that the order is based on a consideration of the amended answer of the defendant Rinke and his third-party complaint against the third party defendants. Since that is not the fact, I am signing the counter order submitted by defendants.

█ Plaintiffs also ask that the order denying their cross motion, to amend the complaint, should state that it is denied without prejudice to a renewal under certain circumstances. I denied plaintiffs' motion principally for the reason that there was "no real showing of any mistakes which would move the court towards allowing an amendment of the complaint". Laches, the lapse of fourteen years, together with the death of an important witness, also influenced me in denying plaintiffs' motion. I think the order to be entered on the denial of plaintiffs' motion should be without any reservations and I have, therefore, signed the first proposed order submitted by plaintiffs.

█ Defendant and the third-party defendants moved on January 23, 1941, to reargue their original motion to dismiss the complaint and asked that in construing the trust I consider certain collateral instruments allegedly executed simultaneously with the trusts and certain "cir-

cumstances attendant upon the execution of the trusts". I suppose this means that I should consider the allegations in some of the special defenses of defendant Rinke's amended answer. This I must refuse to do, because the original motion was not for judgment on the pleadings, Rule 12(c), nor for summary judgment. Rule 56(b). As to the other arguments advanced on the motion for reargument, I do not find in them any reason for changing any part of the written opinion I filed herein on January 17, 1941. The motion for reargument is denied and a proposed order to that effect should be submitted on notice.