OPINION OF THE COURT
John B. Riordan, S.
The successor trustee of several lifetime trusts commenced a proceeding for advice and direction regarding the validity of several purported exercises of powers of appointment over the corpus of the trusts. By decision and order dated December 21, 2000, the court rendered its decision regarding the purported exercises of the powers of appointment in four of those trusts (Matter of Marcus, NYLJ, Jan. 3, 2001, at 27, col 1). The court will now consider the exercises of the powers of appointment in the Marcus Group 2 Trust and the RSX Trust and other issues which have arisen with regard to these trusts incident to the determination of the validity of the purported exercises of the powers of appointment. Specifically, the issues presented are: (1) whether the Marcus Group 2 Trust (hereinafter referred to as MG2 Trust, or simply MG2) is valid, and, if so, whether the power of appointment purportedly exercised in connection therewith is valid, and (2) whether this court has jurisdiction to decide issues related to the RSX Trust despite the instrument’s provision that jurisdiction is solely with the courts of the Bahama Islands, and, if this court has such jurisdiction, whether the RSX Trust is void as violative of the rule against perpetuities. For the reasons that follow, the court concludes that the MG2 Trust is valid, but that the purported exercise of a power of appointment thereunder by Roberta Doben may be invalid; the court also concludes that it can and should properly exercise jurisdiction over the RSX Trust, and upon exercise of that jurisdiction, determines that the trusts’ alleged violation of the rule against perpetuities has not been proven and the trust is, therefore, valid, but Roberta Doben’s purported exercise of a power of appointment thereunder may be invalid.
The Marcus Group 2 Trust
Considering the MG2 Trust first, it was created as part of the Marcus Group Trusts Agreement, which created three sep *499 arate trusts, the Marcus Group 1 Trust, Marcus Group 2 Trust, and Marcus Group 3 Trust. Only the validity of the MG2 Trust is in issue before the court. The primary beneficiaries of MG2 are Roberta (Marcus) Doben and all of her children. Roberta is one of the children of Max and Nettie Marcus; her brother Arnold is the only other child of Max and Nettie. Nettie Marcus is the settlor of the Marcus Group Trusts Agreement. Pursuant to the terms of MG2, Roberta has a present and testamentary special power of appointment over the corpus of the trust. She purportedly exercised that power on April 16, 1997, by appointing the corpus thereof to a trust she created, the Birdie Descendant’s Trust No. 2. Prior thereto, Gerald Rosenblum, as successor trustee of MG2, allegedly lent $141,682 of the trust’s $144,347.27 corpus, or slightly more than 98%, to Arnold Marcus. Suffice it to say that Roberta has questioned the propriety of those loans. Rosenblum now argues that MG2 is invalid, despite the fact that it has been in existence for 30 years and Rosenblum has been the trustee thereof for approximately 14 years. Arnold argues that MG2 itself is not invalid, but that the grant of the power of appointment in favor of Roberta is ambiguous, requiring the introduction of parol evidence to determine the creator’s intent.
Apparently, neither an original signed copy of the Marcus Group Trusts Agreement nor a photocopy of a signed agreement exists. Both Arnold and Rosenblum concede that the absence of such a document is not dispositive of the issue, and that a valid trust could exist in the absence of an executed trust instrument (see Orentreich v Prudential Ins. Co. of Am., 275 AD2d 685).* Rosenblum argues that the absence of such a writing “raises an issue regarding Nettie’s present intention to create the trust” and further discovery is necessary to determine if Nettie had such an intention. The court disagrees. The copy of the unsigned Marcus Group Trusts Agreement is dated March 1, 1972. It is undisputed that the trusts have been administered since that time, and indisputable that the copy of trust instrument provided contains all of the provisions necessary to establish a valid trust (Orentreich, supra; 1 Bogert, Trusts and Trustees § 45 [2d ed rev]). It is not alleged by any party that MG2 has ever been administered pursuant to terms other than those set forth in the unsigned copy of the Marcus Group Trusts Agreement. The court also points out *500 that in prior litigation in this court regarding Rosenblum’s authority to make the subject loans to Arnold in the first place, both Rosenblum and Arnold represented to this court that Rosenblum had the authority to make the loans pursuant to the terms of the trust agreement which Rosenblum now asserts is invalid. The court relied on those assertions in its ruling, and Rosenblum is, therefore, estopped from arguing the invalidity of MG2. “Under the doctrine of judicial estoppel, or estoppel against inconsistent positions, a party is precluded from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding” (Maas v Cornell Univ., 253 AD2d 1, 5, affd 94 NY2d 87). Authority also exists to deny Rosenblum the right to contest the validity of a trust which he has been administering for almost 14 years on grounds of laches and equitable estoppel (Lincoln Rochester Trust Co. v Smith, 4 Misc 2d 304; 106 NY Jur 2d, Trusts § 56, at 88; 90 CJS, Trusts § 83).
The court also rejects Arnold’s contention that although the trust itself is valid, the grant of the power of appointment is not. Arnold does not argue the invalidity of the trust itself or of any provision thereof, except the one that grants Roberta the right to exercise a power of appointment over the corpus of the trust. As to this provision, he sees an ambiguity which, he argues, requires parol evidence to determine the settlor’s intent. The provision in question reads as follows:
“2.5 Successor Limited Power of Appointment. Subject to the restrictions of Section 9.4 of Article IX, after the death of the Grantor’s husband, the beneficiary of each separate trust who is a child of the Grantor, may, if such child shall have attained the age of twenty-five (25) years, during such child’s lifetime or upon such child’s death, appoint all or any part of the trust estate of the trust of which such child is a beneficiary to or for the benefit of any one or more of the descendants of the Grantor; provided, however, that if more then [sic] one child of the Grantor shall be beneficiaries of a separate trust, then as to such trust the power of appointment granted herein shall be exercisable by them jointly.”
Arnold contends that at the time the trust was purportedly executed in 1972, both he and Roberta had already attained the age of 25 years, creating an ambiguity in the document which must be determined by the introduction of parol *501 evidence. The argument is that Nettie, the settlor, may have intended to give the power of appointment to her grandchildren, rather than her children. The court sees no need for the introduction of parol evidence and no reason to give any meaning to the word “child” other than its ordinary meaning. The settlor identifies those intended to benefit from the trust as “child,” “children,” “beneficiary,” “beneficiaries,” or “descendants.” The very provision in question provides “the beneficiary of each separate trust who is a child of the Grantor” is given a limited power of appointment over the trust of which he or she is the principal beneficiary. The settlor, therefore, differentiated between her children and other beneficiaries of the trusts, and did so in other provisions of the trust instrument (Matter of Friend, 164 Misc 373, affd 253 App Div 801); it is therefore clear that when “children” are mentioned, the settlor means her children, i.e., Arnold and Roberta (Matter of Marine Midland Bank, 74 NY2d 448). The court is accordingly satisfied that MG2 is a valid trust and that the power of appointment granted therein to Roberta is also valid.
Roberta then purported to exercise that power of appointment by an instrument dated April 16, 1997, by assigning the assets of MG2 to a trust which Roberta created, the Birdie Descendants Trust No. 2. It is unknown to the court whether all of the measuring lives used in the Birdie Descendant’s Trust No. 2 were lives in being on March 1, 1972, the date on which MG2 was settled. If they were not, the exercise of the power of appointment in favor of the Birdie Descendant’s Trust No. 2 is void as violative of the rule against perpetuities (EPTL 10-8.1 [a] [2]; 9-1.1 [b]).
The RSX Trust
Regarding the RSX Trust, the court asked counsel to submit memoranda on the court’s authority to exercise jurisdiction over the trust despite article III thereof which provides:
“This Settlement is established under the laws of the Bahama Islands and the rights of all parties and the interpretation construction and effect of each and every provision hereof shall be subject to the exclusive jurisdiction of and construed and regulated according to the laws of the Bahama Islands which shall be the forum for the administration hereof.”
All parties have submitted memoranda to the court on this issue, and all are in accord that the court properly has jurisdic *502 tion over the trust and should exercise it. The court is satisfied that pursuant to articles XII (N) and VII (B) of the trust instrument, this court has jurisdiction over the trust. Those articles provide for the removal of a trustee at the election of the beneficiary or beneficiaries, and the subsequent removal of the trust from the Bahama Islands to another jurisdiction, and further provide that the laws of the new jurisdiction shall control. Although the trust instrument indicates that the trustee or beneficiary should execute a declaration to so remove the trust, the court is satisfied from the pleadings and memoranda submitted that the requirement of a written declaration has been satisfied. Also, SCPA 1501 (1) (c) provides statutory authority for this court’s exercise of jurisdiction, and the fact that all of the parties with a beneficial interest but one reside in this state, that the trustee resides here, that the trust corpus is physically situate here, and the trust has been administered here since at least 1985, provides more than adequate contact for this court to adjudicate this controversy (Hanson v Denckla, 357 US 235).
Having decided that the trust is situate in New York and that, pursuant to the terms of the trust instrument, New York law is to be applied, the court will consider whether the RSX Trust violates the New York rule against perpetuities. The court notes that Rosenblum’s papers include the affidavit of Sean McWeeney, who is an attorney admitted to the bar of the Bahama Islands and also a former Attorney General of the Bahama Islands. Mr. McWeeney’s affidavit indicates that one of his areas of specialty is trust law and that he is intimately familiar with the rule against perpetuities in the Bahama Islands. Based on his affidavit, the court is satisfied that the law of the Bahama Islands and the law of New York are identical regarding the remoteness of vesting and the rule against perpetuities. Although the rule against perpetuities in the Bahamas was substantially modified by legislation in 1995, that legislation was prospective only and is inapplicable to Arnold Marcus’ purported exercise of a power of appointment in 1984.
On April 10, 1984, Arnold Marcus exercised a limited power of appointment which was given to him pursuant to a document called the T-619 Settlement. He exercised that power by assigning the assets of T-619 to a new trust, the RSX Trust, which Arnold created, also on April 10, 1984. The T-619 document indicates that T-619 itself was created by the exercise of a limited power of appointment granted in another document, *503 the location, terms, and creator of which are unknown, despite diligent efforts to ascertain that information. The court notes that if T-619 were the original instrument, then RSX would be valid without question (EPTL 10-8.1 [a] [2]; Matter of Reynal, 58 Misc 2d 518), because it was created by a special power of appointment and uses measuring lives which were in being on the date of the creation of T-619.
Rosenblum argues, however, that because T-619 was created by the exercise of a power of appointment in another document, and that it is "axiomatic” that the other document was executed before July 20, 1970, then both T-619 and RSX are void as they violate the rule against perpetuities. Although Rosenblum might be judicially estopped from taking such a position now (see Maas v Cornell Univ., supra; contra Hadley v Rinke, 39 F Supp 207), other grounds exist to reject his argument. Although it is generally true that the law does not presume the existence of a trust and its elements must be proven by the party claiming that a trust exists (2 Bogert, Trusts and Trustees § 50, at 102 [2d ed rev]) here there is no doubt as to the existence of the RSX Trust which has been administered for almost 18 years. There is no question as to who the trustee is or who the beneficiaries are. Rosenblum, the trustee, now argues that it is axiomatic that the trust is invalid. Propositions which are axiomatic require no proof, and Rosenblum must assert that RSX’s invalidity is axiomatic because he has no proof that it is. While there is a dearth of judicial authority on the issue, there is at least one case holding that the burden of proving that a contract is invalid as violative of the rule against perpetuities is on the party asserting its invalidity (McInerney v Slights, 1988 WL 34528, 1988 Del Ch LEXIS 47). More generally, the burden of proof in a civil matter is on the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue (8 Carmody-Wait 2d, NY Prac § 56:18, at 90). The court also notes that EPTL 9-1.3 (b) provides that with respect to any matter affecting the rule against perpetuities, it shall be presumed that the creator intended the estate to be valid. There is no doubt that all of the parties to this proceeding believed that RSX was a valid trust and conducted themselves accordingly. The trustee therefore bears the burden of establishing that the document which created the power of appointment used to create T-619 was executed before July 20, 1970; he has offered no evidence whatever tending to prove that allegation other than conjecture and surmise. The court accordingly determines that *504 RSX does not violate the rule against perpetuities and is a valid trust (see, Cummins v County of Onondaga, 84 NY2d 322). The fact that the RSX Trust creates a further power of appointment, the exercise of which might violate the rule against perpetuities, does not affect the validity of RSX; the court can look at the circumstances as they exist on the date the power is exercised to determine if there is a violation (EPTL 10-8.3), but that will affect only the exercise of the power of appointment, not RSX which created it (Gray, Rule Against Per-petuities § 258 [4th ed]).
Any conclusion other than a finding of the validity of RSX would produce a result not only absurd, but grossly inequitable. Of the $419,954.17 which was in the RSX Trust, Rosenblum lent $419,069, or 99.97% thereof, to Arnold Marcus. The beneficiaries of RSX are Roberta and her family. A finding that RSX violates the rule against perpetuities would require that the corpus of the trust (now in the form of notes from Arnold) revest in the unknown settlor of the instrument containing the power of appointment used to create T-619. Because that person is unknown, presumably the corpus would be payable to the Comptroller pursuant to SCPA 2222 and likely remain there, unclaimed forever. Since Roberta appears incapable of establishing a right to those funds, her objections to Rosen-blum’s stewardship as trustee would have to be dismissed, as neither she nor anyone else would have standing to object (Turano and Radigan, New York Estate Administration § 6.03 [b] [2002 ed]). Conceivably, Arnold would not be required to repay the notes and Rosenblum would not be held to account for making the loans. Arnold has separately argued that he may have been mistaken when he believed he had the power to create RSX in the first place pursuant to the power of appointment in T-619. This position is clearly contrary to or inconsistent with an earlier assumed position in these proceedings, especially the one he took when he claimed that the trustee of RSX was authorized to lend him over $400,000 of the trust’s assets; Arnold should be and is judicially estopped from asserting that position now (Maas v Cornell Univ., supra).
Regarding Roberta’s purported exercise of the power of appointment granted to her in the RSX Trust, the court is unable to determine at this time if that exercise is valid, for the same reasons that apply to her exercise of the power given her in MG2, as discussed above.

 It is alleged that MG2 was settled in March 1972, and is unaffected by EPTL 7-1.17 which requires lifetime trusts established on or after December 25, 1997 to be in writing to be valid.